Case No. 24-7282

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**KARLY RIDINGS,**
*Plaintiff - Appellant,*

v.

**PEACEHEALTH**,
*Defendant - Appellee.*

Appeal from the United States District Court
for the District of Oregon
Case No. 6:23-cv-01514-MTK, Judge Mustafa T. Kasubhai

# ANSWERING BRIEF OF DEFENDANT-APPELLEE PEACEHEALTH

Michael T. Garone, OSB No. 802341
Kelly S. Riggs, OSB No. 094862
Megan Breen, OSB No. 213676
Schwabe, Williamson & Wyatt, P.C.
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

Attorneys for Defendant-Appellee
PeaceHealth

## CORPORATE DISCLOSURE STATEMENT

PeaceHealth is a public benefit nonprofit corporation. Its parent corporation is PeaceHealth Networks, which is also a public benefit nonprofit corporation. No publicly held corporation owns 10% or more of PeaceHealth's stock.

/s/ Michael T. Garone
Michael T. Garone, OSB No. 802341

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

STATEMENT OF JURISDICTION .......... 3

STATEMENT OF THE ISSUES .......... 3

STATEMENT OF THE CASE .......... 3

- I. COVID-19 Pandemic and Healthcare Vaccine Mandates .......... 3
- II. Ridings' Complaint .......... 5
- III. Procedural History Before the District Court .......... 7

STANDARD OF REVIEW .......... 15

ARGUMENT .......... 16

- I. The District Court did not err in granting PeaceHealth's motion to dismiss Ridings' failure-to-accommodate claims .......... 16
  - A. The first element of a Title VII failure-to-accommodate case requires a bona fide religious belief, the practice or observance of which conflicts with an employment duty. .......... 18
    - **1.** Title VII requires accommodation of religious beliefs, but not secular ones. .......... 19
    - **2.** Plaintiffs must also plausibly allege an *actual conflict* between an employment duty and a religious observance or practice. .......... 26

B. Ridings has not met her prima facie case because she has not plausibly alleged a religious belief in conflict with vaccination against COVID-19. ............ 36

**1.** This Court should consider only the allegations in Ridings' Complaint because Ridings did not preserve the issue of consideration of the extraneous letter below or before this Court. ............ 36

**2.** Ridings' allegations are threadbare and do not state an *actual conflict* between an employment duty and her religious beliefs. ....... 47

**3.** Even if the Court considers the extraneous letter, Ridings does not state a religious-based conflict with COVID-19 vaccination......... 51

C. Ridings' arguments are irrelevant or incorrect, and do not establish that she met her prima facie case..... 56

**1.** Ridings fails to understand that she did not meet the minimum burden of alleging *facts* showing a religious-based conflict with vaccination. ............ 57

**2.** Ridings fails to understand the principle that, while a religious belief may be irrational, the belief must nevertheless bear some rational connection to the employment duty with which it is allegedly in conflict. ......... 59

**3.** Ridings erroneously rejects the requirement that she must allege an *actual conflict* between a religious belief and an employment duty. ............ 62

CONCLUSION ............ 70

CIRCUIT RULE 28-2.6 - STATEMENT OF RELATED CASES ........... 71

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeyeye v. Heartland Sweeteners, LLC*,
721 F.3d 444 (7th Cir. 2013) .................... 20

*Africa v. Pennsylvania*,
662 F.2d 1025 (3d Cir. 1981) .................... 22, 23, 24, 25

*Alvarado v. City of San Jose*,
94 F.3d 1223 (9th Cir. 1996) .................... 23

*Arpin v. Santa Clara Valley Transp. Agency*,
261 F.3d 912 (9th Cir. 2001) .................... 44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 15, 48

*Bartholomew v. Washington*,
725 F. Supp. 3d 1225 (W.D. Wa. 2024) .................... 32

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) .................... 15

*Biden v. Missouri*,
595 U.S. 87 (2022) .................... 5

*Bolden-Hardge v. Office of California State Controller*,
63 F.4th 1215 (9th Cir. 2023) .................... *passim*

*Bowerman v. St. Charles Health Sys., Inc.*,
No. 6:23-cv-01488-MC, 2024 WL 3276131 (D. Or. July 1, 2024), *appeal filed* No. 24-5002 (Aug. 15, 2025) .................... 33

*Bry v. Asante*,
No. 1:24-cv-1185-AA, 2025 WL 1332214 (D. Or. May 7, 2025), *appeal filed* No. 25-3625 (June 9, 2025) .................... 32

*Cagle v. Weill Cornell Med.*,
680 F. Supp. 3d 428 (S.D.N.Y. 2023) .......... 28

*Callahan v. Woods*,
658 F.2d 679 (9th Cir. 1981) .......... 19, 58

*Chrysler Corp. v. Mann*,
561 F.2d 1282 (8th Cir. 1977) .......... 65

*Cline v. PeaceHealth*,
Case No. 6:23-cv-01985-MTK, *appeal docketed*, No. 25-1229 (9th Cir., Feb. 26, 2025) .......... 6

*Combs v. PeaceHealth*,
Case No. 6:23-cv-01673-MTK, *appeal docketed*, No. 25-969 .......... 6

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) .......... 38

*Craven v. Shriners Hosps. for Child.*,
No. 3:22-cv-01619-IM, 2024 WL 21557 (D. Or. Jan. 2, 2024) .......... 53

*Cruz v. Kaiser Foundation Hosps.*,
773 F. Supp. 3d 1045 (D. Haw. 2025) .......... 28, 29, 31, 50, 54

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 48

*Detwiler v. Mid-Columbia Med. Ctr.*,
No. 3:22-cv-01306-JR, 2022 WL 19977290 (D. Or. Dec. 20, 2022), *adopted* 2023 WL 3687406 (D. Or. May 26, 2023) .......... 4, 32, 51

*Devito v. Legacy Health*,
No. 3:22-cv-01983-YY, 2024 WL 687943 (D. Or. Feb. 19, 2024) .......... 28, 30, 35

*Doe v. San Diego Unified Sch. Dist.*,
19 F.4th 1173 (9th Cir. 2021) .......... 26

*Does 1-11 v. Bd. of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir. 2024) ........................................................ 66

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ........................................................ 15

*Dozier v. St. Charles Health Sys, Inc.*, No. 1:23-cv-1080-MK, 2024 WL 4005789 (D. Or. Aug. 29, 2024) ........................................................ 31, 52

*Dzung Chu v. Oracle Corp.*, 627 F.3d 376 (9th Cir. 2010) ........................................................ 41

*EEOC v. Sears, Roebuck Co.*, 417 F.3d 789 (7th Cir. 2005) ........................................................ 65

*El v. United Parcel Serv., Inc.*, No. 3:19 cv-333 SI, 2020 WL 2616397 (D. Or. May 22, 2020) ........................................................ 16

*Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 (3d Cir. 2017) ........................................................ *passim*

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ........................................................ 34, 61

*Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458 (M.D. Pa. 2022) ........................................................ 33, 61-62

*Gage v. Mayo Clinic*, No. 22-cv-2091, 2023 WL 3230986 (D. Ariz. May 3, 2023), *aff'd* 2025 WL 1733503 (9th Cir. June 18, 2025) ........................................................ 28, 31, 50

*Gamon v. Shriners Hosp. for Children*, No. 3:23-cv-00216-IM, 2023 WL 7019980 (D. Or. Oct. 25, 2023) ........................................................ 29, 31

*Goff v. PeaceHealth*,
Case No. 6:22-cv-01991-MTK, *appeal docketed*, No. 25-125 (9th Cir. Jan. 8, 2025) ........ 6

*Harper v. Harbor Health*,
No. 21-cv-11562-AK, 2022 WL 2971883 (D. Mass July 27, 2022) ........ 27

*Heller v. EBB Auto Co.*,
8 F.3d 1433 (9th Cir. 1993) ........ 21, 27, 65

*Indep. Towers of Washington v. Washington*,
350 F.3d 925 (9th Cir. 2003) ........ 44, 45

*Johnson v. Brown*,
567 F. Supp. 3d 1230 (D. Or. 2021) ........ 4

*Kamrath v. Addictions Recovery Ctr., Inc.*,
No. 1:23-cv-01516-MC, 2024 WL 2785385 (D. Or. May 30, 2024) ........ 19, 29, 32, 50

*Kather v. Asante Health Sys.*,
No. 1:22-cv-01842-MC, 2023 WL 4865533 (D. Or. July 28, 2023) ........ 11, 29, 31, 35, 49

*Keene v. City and Cnty. of San Francisco*,
No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023) ........ 20, 55, 59, 66

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 46

*Mason v. Gen. Brown Cent. Sch. Dist.*,
851 F.2d 47 (2d Cir. 1988) ........ 20, 21, 57, 58, 63

*McCall v. Andrus*,
628 F.2d 1185 (th Cir. 1980) ........ 40

*McCune v. Asante Rogue Regional Medical Ctr., LLC*,
No. 1:23-cv-799-CL, 2024 WL 3290348 (D. Or. July 3, 2024) ........ 29, 31, 49

*Morris v. Asante Health Sys.*,
No. 1:22-cv-01707-CL, 2025 WL 1770806 .......... 65

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 15

*Nogowski v. St. Charles Med. Ctr.*,
No. 6:23-cv-0027-AA, 2023 WL 7003702 (D. Or. Oct. 24, 2023) .......... 33, 62

*O'Hailpin v. Hawaiian Airlines, Inc.*,
No. 22-00532 JAO-RT, 2023 WL 8600498 (D. Haw. Dec. 12, 2023) .......... 25

*Orr v. Plumb*,
884 F.3d 923 (9th Cir. 2018) .......... 46, 69

*Parker v. PeaceHealth*,
Case No. 6:23-cv-00450-MTK, *appeal docketed*, No. 25-163 (9th Cir., Jan. 10, 2025) .......... 6

*Parsons v. PeaceHealth*,
Case No. 6:22-cv-01246-MTK, *appeal docketed*, No. 25-165 (9th Cir. Jan. 10, 2025) .......... 6

*Peterson v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) .......... 16, 17

*Prodan v. Legacy Health*,
716 F. Supp. 3d 1044 (D. Or. 2024) .......... *passim*

*Rainey v. Westminster Public School*,
No. 22-cv-03166-RMR-KAS, 2024 WL 3329048 (D. Colo. July 7, 2024) .......... 67, 68

*Riegels v. Comm'r (In re Estate of Saunders)*,
745 F.3d 953 (9th Cir. 2014) .......... 45

*Ringhofer v. Mayo Clinic, Ambulance*,
102 F.4th 894 (8th Cir. 2024) .......... 63, 64, 68

*Ruscitti v. Legacy Health*,
No. 3:23-cv-00787-JR, 2023 WL 8006269 (D. Or. Sept. 27, 2023), *adopted* 2023 WL 8006269 (D. Or. Nov. 16, 2023) .................. 34

*Sample v. Health*,
No. 3:23-cv-1554-AR, 2024 WL 5470183 (D. Or. Nov. 27, 2025) .................. 29, 31

*Sano v. PeaceHealth*,
Case No. 6:22-cv-01210-MTK, *appeal docketed*, No. 25-100 (9th Cir. Jan. 7, 2025) .................. 6

*Schmidt v. Johnstone*,
263 F. Supp. 2d 1219 (D. Ariz. 2003) .................. 43

*Stephens v. Legacy-GoHealth Urgent Care*,
No, 3:23-cv-00206-SB, 2023 WL 7623865 (D. Or. Nov. 14, 2023) .................. 11

*Thomas v. Arn*,
474 U.S. 140 (1985) .................. 42, 43

*Thornton v. Ipsen Biopharmaceuticals, Inc.*,
No. CV 23-11171-JCB, 2023 WL 7116739 (D. Mass. Oct. 26, 2023) .................. 35

*Tiano v. Dillard Dep't Stores, Inc.*,
139 F.3d 679 (9th Cir. 1998) .................. *passim*

*Trinh v. Shriners Hosps. For Child.*,
No. 3:22-cv-01999-SB, 2023 WL 7525228 (D. Or. Oct. 23, 2023) .................. 34, 48

*Troulliet v. Gray Media Grp., Inc.*,
No. 22-5256, 2023 WL 2894707 (E.D. La. April 11, 2023) .................. 28

*United States v. Graf*,
610 F.3d 1148 (9th Cir. 2010) .................. 45

*United States v. Reyna-Tapia*,
328 F.3d 1114 (9th Cir. 2003) .................. 42

*United States v. Willis*,
431 F.3d 709 (9th Cir. 2005) ........ 40, 46

*Walter v. Eugene Sch. Dist. 4J*,
No. 6:23 cv 00688 AA, 2024 WL 1367188 (D. Or. March 31, 2024) ........ 17

*Welch v. OHSU*,
No. 3:23-cv-01231-SB, 2024 WL 3106930 (D. Or. May 17, 2024) ........ 68, 69, 70

*White v. Columbia Sportswear Co.*,
No. 3:24-cv-00006-SB, 2024 WL 5080032 (D. Or. Oct. 28, 2024) ........ 68, 69, 70

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ........ 68

*Xodus v. Wackenhut Corp.*,
619 F3d 683 (7th Cir 2010) ........ 65

**Statutes**

28 U.S.C. § 636(b)(1)(C) ........ 42

28 U.S.C. § 1291 ........ 3

28 U.S.C. § 1331 ........ 3

28 U.S.C. § 2107 ........ 3

42 U.S.C. § 2000e, *et seq*. ........ *passim*

42 U.S.C. § 2000e(j) ........ 16

ORS 659A.030 ........ 2, 7, 16

ORS 659A.030(1)(a) ........ 16

**Other Authorities**

First Amendment ........ 23, 67

Fed R. App. P. 4(a)(1)(A) .......... 3

Fed R. App. P. 28 .......... 44

Fed. R. Civ. P. 10(c) .......... 37, 38

Fed. R. Civ. P. 12(b)(6) .......... 3, 15

Fed. R. Civ. P. 15 .......... 9

Fed. R. Civ. P. 60 .......... 12

Fed. R. Civ. P. 72(b)(3) .......... 42

OAR 333-019-1010 .......... 1, 5

*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at L.2, U.S. Equal Emp. Opportunity Comm'n (March 1, 2022),https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L. .......... 21, 26

## INTRODUCTION

This case arises in the context of the COVID-19 pandemic, which began in 2020 and devastated Oregon communities, particularly vulnerable populations, in the ensuing years. In late 2021, following the development, approval, and widespread use of life-saving vaccines, the Oregon Health Authority ("OHA") issued a rule requiring all Oregon healthcare providers and staff to either be fully vaccinated against COVID-19 or comply with its process for documenting a religious or medical exception to the vaccine requirement. OAR 333-019-1010.

In line with that rule, Respondent PeaceHealth ("PeaceHealth"), a not-for-profit Catholic health system, adopted a policy requiring all staff vaccinate against COVID-19, with limited exceptions for documented medical or religious conflicts. Appellant Karly Ridings ("Ridings"), who worked as a Registered Nurse at one of PeaceHealth's Oregon facilities, applied for a religious exception, which PeaceHealth erred on the side of approving.

Because scientific data and agency guidance indicated that permitting unvaccinated workers to remain in-person posed an unreasonable health and safety risk to its employees and vulnerable

patients constituting undue hardship, and because Ridings' position could not be accommodated with remote work, PeaceHealth placed her on administrative leave as the only available reasonable accommodation.

Subsequently, Ridings asserted failure-to-accommodate claims under Title VII and its Oregon analogue, ORS 659A.030. Her Complaint contained only conclusory allegations that she was a devout Christian who did not believe it was consistent with her faith to take the COVID-19 vaccine. Ridings, who was pregnant when she sought a religious exception, also expressed secular opposition to the vaccine based on concerns about the lack of studies on its potential side effects and the fact that her mother had suffered an adverse reaction to the vaccine.

PeaceHealth moved to dismiss those religious failure-to-accommodate claims for failure to state a claim, and the District Court granted its motion. In the decision on review here, the Court explained that Ridings' Complaint amounted to no more than "a general allegation of religious conflict without identifying a conflicting belief" and the allegations contained in the Complaint were "not sufficient to

survive [PeaceHealth's] motion to dismiss." ER-17-18. As explained below, the District Court did not err and its decision should be affirmed.

## STATEMENT OF JURISDICTION

The District Court had federal question subject matter jurisdiction, 28 U.S.C. § 1331, over this case because Ridings asserted a claim under Title VII of the Civil Rights Act. 42 U.S.C. § 2000e, *et seq*. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the District Court entered final judgment in favor of PeaceHealth. *See* Judgment, 1-ER-19. The District Court entered the Judgment on November 4, 2024. Ridings filed the notice of appeal on November 27, 2024, within the time required by Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2107.

## STATEMENT OF THE ISSUES

1. Was the District Court correct to grant PeaceHealth's motion to dismiss Ridings' religious failure-to-accommodate claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure?

## STATEMENT OF THE CASE

### I. COVID-19 Pandemic and Healthcare Vaccine Mandates

The SARS-CoV-2 virus, and the COVID-19 infection it causes, upended life for Oregonians in early 2020. COVID-19 presented "a

serious risk to the health and safety of our community, nation, and world." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1238 (D. Or. 2021). As Ridings recognized in her pleadings, this disruption was felt acutely among those who worked in healthcare settings. *See* ER-22.

Thankfully, the development, approval, and widespread use of life-saving vaccines substantially reduced those health and safety risks. As recognized by the Oregon District Court, "Oregon responded to this crisis by mandating vaccination of workers in healthcare settings, which this District has determined is 'a rational way to further the State's interest in protecting everyone's health and safety during the COVID-19 pandemic." *Detwiler v. Mid-Columbia Med. Ctr.*, No. 3:22-cv-01306, 2022 WL 19977290, at *2 n. 1 (D. Or. Dec. 20, 2022), *adopted* 2023 WL 3687406 (D. Or. May 26, 2023) (quoting *Johnson v. Brown*, 614 F. Supp. 3d 776, 782 (D. Or. 2022)). Indeed, in August 2021, the Oregon Health Authority ("OHA") issued a rule requiring all Oregon healthcare providers and staff to either be fully vaccinated against COVID-19 or comply with its process for documenting a religious or medical exception to the vaccine requirement. OAR 333-019-1010.

In November 2021, the U.S. Center for Medicare and Medicaid Services also imposed a nationwide vaccine mandate for healthcare workers, which the Supreme Court upheld, affirming that the vaccine was "necessary to promote and protect patient health and safety." *Biden v. Missouri*, 595 U.S. 87, 93 (2022). Both the state and federal vaccine mandates allowed for exceptions based on religious or disability-related accommodation requests but required that such accommodations not pose an unreasonable risk to others, especially to vulnerable patients. *Id.*; OAR 333-019-1010.

## II. Ridings' Complaint

Ridings worked for PeaceHealth as a Registered Nurse. ER-21. According to her Complaint, Ridings is a "devoutly religious member of the Christian faith who endeavors at all times to follow the teachings of Christ." ER-22. Ridings alleged that, as a devout Christian, she "did not believe it was consistent with her faith to take the [COVID-19] vaccine." *Id.* Without any further description of her religious beliefs, she also alleged that she "was pregnant and there had been no studies on the effects of the vaccine on the unborn, and [her] mother had suffered a severe and life-threatening reaction to the COVID-19 vaccine." *Id.*

"Accordingly," after PeaceHealth announced its intent to require COVID-19 vaccination for its employees, Ridings "applied for a religious exemption to the vaccine mandate on or about August 27, 2021." *Id.* PeaceHealth granted her request. *Id.*

Because Ridings' role required an in-person presence, *see* ER-21-23 (so-admitting), PeaceHealth could not accommodate her with an in-person or remote work accommodation absent undue hardship to its business, and so placed her on administrative leave, as the only available reasonable accommodation, *see* ER-22-23.[1]

[1] In six other cases involving plaintiffs represented by Ridings' counsel who brought religious discrimination claims against PeaceHealth under Title VII and Oregon law regarding its vaccine requirement, summary judgment was granted to PeaceHealth on its undue hardship affirmative defenses. *See Cline v. PeaceHealth,* Case No. 6:23-cv-01985-MTK, appeal docketed, No. 25-1229 (9th Cir., Feb. 26, 2025); *Combs v. PeaceHealth*, Case No. 6:23-cv-01673-MTK, *appeal docketed*, No. 25-969 (9th Cir., Feb. 14, 2025); *Parker v. PeaceHealth*, Case No. 6:23-cv-00450-MTK, *appeal docketed*, No. 25-163 (9th Cir., Jan. 10, 2025); *Parsons v. PeaceHealth*, Case No. 6:22-cv-01246-MTK, *appeal docketed*, No. 25-165 (9th Cir. Jan. 10, 2025); *Goff v. PeaceHealth*, Case No. 6:22-cv-01991-MTK, *appeal docketed*, No. 25-125 (9th Cir. Jan. 8, 2025); *Sano v. PeaceHealth*, Case No. 6:22-01210-MTK, *appeal docketed*, No. 25-100 (9th Cir. Jan. 7, 2025). These cases are currently on appeal to this Court. PeaceHealth has recently filed several other motions for summary judgment on the undue hardship issue, which are pending in the District Court.

On October 16, 2023, Ridings filed a Complaint asserting religious failure-to-accommodate claims against PeaceHealth under Title VIII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. and ORS 659A.030. ER-20-28.

## III. Procedural History Before the District Court[2]

On January 2, 2024, PeaceHealth moved to dismiss Ridings' failure-to-accommodate claims, arguing they rested only upon "threadbare" references to her religious beliefs, lacking any facts specifying how her religious beliefs conflicted with PeaceHealth's vaccine requirement. ER-37-47. PeaceHealth further argued that Ridings non-conclusory allegations, taken as true, stated only "medical and secular" objections to the vaccine based on safety concerns. ER-34.

In her response to PeaceHealth's motion, Ridings recognized "it is reversible error when a district court considers matters extraneous to the pleadings while treating the motion as one to dismiss, rather than

---

[2] Ridings' version of the procedural history of this case glosses over the details of PeaceHealth's motion to dismiss and resulting decisions. Those details are important to this case, as they demonstrate that the Magistrate Judge and District Judge did *not* consider any matter extraneous to the pleadings. Given these omissions, the Court should view statements contained in Ridings' opening brief with caution.

as one for summary judgment." ER-39. Nevertheless, Ridings's response then heavily referenced a document outside of her pleadings: a letter she submitted to PeaceHealth in support of her religious exception request. ER-40; *see also* ER-51-52.

The letter was submitted as an exhibit to a declaration from Ridings' attorney, who stated that it was "based on my own personal knowledge and on the information provided to me by my client." ER-49. According to Ridings' attorney, the document was "the religious exemption request [Ridings] submitted to [PeaceHealth]" at some unidentified time in 2021. *Id.* The letter is dated August 23, 2021, and is unsigned. ER-51.

Ridings did not mention the letter anywhere in her Complaint, which alleged only that she "applied for a religious exemption" without other detail. *See* ER-21-22. Despite that omission, Ridings asserted, without argument or explanation, that the letter was "incorporated by reference in the Complaint." ER-22, 40. She claimed the letter provides

a "detailed and robust explanation of how taking the COVID-19 vaccine conflicted with her deeply and sincerely held religious beliefs." ER-40.[3]

In its reply, PeaceHealth argued that Ridings "offered no justification for the Court to look beyond the face of her Complaint in order to cure her own pleading deficiencies." ER-55 n.1.[4] PeaceHealth noted that "nothing prevented [Ridings] from alleging facts in her Complaint that set out the same 'detailed and robust explanation of her beliefs,'" yet she "opted not to include those allegations in her complaint." ER-56. Further, PeaceHealth noted that the statements in Ridings' letter "do not exist in the Complaint" and the letter was not

[3] Despite this contention, Riding's letter primarily expresses objection to COVID-19 vaccination based on secular concerns about the newness of the vaccine, the lack of clinical trials for pregnant women, and the possibility of adverse reactions. ER-51. As to her religious beliefs, Riding makes three general references. First, she states, "I must honor and protect my body, my temple. This includes declining a vaccine that has been shown to potential [sic] to cause bodily harm." ER-51-52. Second, she expresses a belief in supporting her "natural God-given immune system." ER-52. Finally, she states: "Though the aborted fetal cells used to create vaccinations in the 1970s and 1980s may be far removed from today's vaccine, they still originate from those aborted children. The practice of using an aborted child's body for science against his will violates my conscience." ER-52.

[4] PeaceHealth contended that the only possible relevance of Ridings "extraneous statements" was to the Court's decision "whether to grant Plaintiff leave to amend under Rule 15." ER-55 n.1.

attached as an exhibit to the Complaint. ER-54-55. As PeaceHealth argued, Ridings opted to omit those statements and the letter from her Complaint, while at the same time recognizing that a "Court's review of a motion to dismiss is generally constrained to the allegations contained on the face of the complaint." ER-54-55.

On April 5, 2024, Magistrate Judge Mustafa T. Kasubhai issued Findings and Recommendations ("F&R"), recommending that PeaceHealth's motion be denied. ER-3-9. In reaching this conclusion, Judge Kasubhai relied *solely* on the allegations of the Complaint and did *not* refer to the existence of the extraneous letter. *See* ER-3-9.

Referencing only the allegations at paragraphs six and ten of the Complaint, Judge Kasubhai found that Ridings stated "a bona fide religious belief that conflicted with an employment duty because, as a Christian, she 'did not believe it was consistent with her faith to take the vaccine' mandated by Defendant." *See* ER-7 (containing citations to those paragraphs).

PeaceHealth filed objections to the F&R, arguing that its recommendation departed from recent in-district authority finding that substantially identical allegations did *not* plausibly state a religious

conflict with an employment duty. *See* ER-59-63 (citing *Kather v. Asante Health Sys.*, No. 1:22-cv-01842-MC, 2023 WL 4865533 (D. Or. July 28, 2023), and *Stephens v. Legacy GoHealth Urgent Care*, No. 3:23-cv-00206-SB, 2023 WL 7623865 (D. Or. November 14, 2023)). In line with that authority, PeaceHealth urged the District Judge to not adopt the F&R, and instead to find insufficient Ridings' "threadbare references to religious beliefs and conclusory assertions of violations of religious beliefs" and grant its motion to dismiss her failure-to-accommodate claims. ER-62. Importantly, PeaceHealth confined its analysis, as had Judge Kasubhai, to the four corners of the Complaint and never referenced Ridings' unsigned letter that had been attached to her lawyer's declaration.

Ridings did not file any objection to the F&R. *See* ER-70-71. She also did *not* file any response to PeaceHealth's objections. ER-15. Thus, Ridings identified no error in the failure to consider the letter; she also made no argument that the District Court should consider the letter under the doctrine of incorporation by reference or any other legal theory.

On November 4, 2024, U.S. District Judge Ann Aiken issued an Order declining to adopt the F&R. ER-14-18. In her Order, Judge Aiken also considered *only* the four corners of the Complaint—making no reference to the existence of Ridings' extraneous letter. Based on the pleadings, Judge Aiken found that Ridings' case was akin to other cases "in which plaintiffs merely allege a general statement of religious conflict without identifying a conflicting belief." ER-16-17. She concluded that Ridings "failed to provide nonconclusory allegations concerning the religious nature of their [sic] objection to the vaccine mandate and a conflict between those religious beliefs and the vaccine mandate," and, on that basis, granted PeaceHealth's motion to dismiss. ER-14-18. Judge Aiken dismissed Ridings' claims *without* prejudice and entered judgment accordingly. ER-18-19. Rather than seek leave to re-plead or relief under Federal Rule of Civil Procedure 60, Ridings opted to file this appeal—in which she places controlling weight on the extraneous letter attached to her lawyer's declaration that was neither mentioned in her Complaint nor considered below. *See* Opening Brief ("Op. Br.") at 3, 14 n. 2, 15 (asserting, without argument, that the letter

was incorporated by reference into the Complaint and claiming District Court "ignored" the letter).

## SUMMARY OF ARGUMENT

The District Court correctly dismissed Ridings' failure-to-accommodate claims because she did not meet the first element of her prima facie case. That element requires a plaintiff to offer non-conclusory allegations plausibly showing a bona fide religious belief, the practice or observance of which conflicts with an employment duty. Ridings failed to make that showing because *her complaint allegations*—the only matter properly considered in this appeal—do not state an *actual conflict* between her sincere religious beliefs and an employment duty to vaccinate against COVID-19.

To begin with, Ridings' argument rests entirely on a document that is extraneous to her pleadings—and critically, a document that is *not* mentioned in her Complaint and, thus, was properly not considered by the lower courts when rendering their decisions below. Ridings fails to address the procedural defects inherent in her reliance on that document: she did not preserve those issues below, nor address them with developed argument on appeal. Consequently, Ridings has waived

these issues, and this Court should confine its analysis to the allegations stated in Ridings' Complaint and reject consideration of materials extraneous to her pleadings.

Confining the relevant analysis to those pleadings, Ridings effectively concedes that the allegations in her Complaint are insufficient. She makes no argument explaining how *any* of those allegations state a religious belief or practice in conflict with COVID-19 vaccination. At most, Ridings' Complaint alleges that she "did not believe it was consistent with her faith to take the [COVID-19] vaccine"—a statement that is so conclusory the Court need not accept it as true. Ridings' remaining allegations express only secular objections to COVID-19 vaccination, and thus are not protected under Title VII.

Finally, even assuming this Court overlooks the unpreserved procedural defects present here to consider the extraneous document (which it should not do), that document also expresses secular objections to COVID-19 vaccination.

Accordingly, this Court should affirm the District Court's decision.

## STANDARD OF REVIEW

This Court applies *de novo* review to a district court's dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper if there is an absence of sufficient facts alleged to support a cognizable legal theory. *Id.*

In ruling on a 12(b)(6) motion, courts follow a "two-pronged approach": first, discount conclusory statements, which are not presumed to be true; and then, assuming well-pleaded factual allegations are true, determine "whether they plausibly give rise to entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 551 (2007)). It is not enough for allegations to be "merely consistent with" a defendant's liability. *Twombly*, 550 U.S. at 547, 555. Instead, they must "be enough to raise a right to relief above a speculative level." *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

## ARGUMENT

### I. The District Court did not err in granting PeaceHealth's motion to dismiss Ridings' failure-to-accommodate claims.

Ridings' Title VII and ORS 659A.030 religious failure-to-accommodate claims are analyzed under the same two-part framework. *El v. United Parcel Serv., Inc.*, No. 3:19-cv-333 SI, 2020 WL 2616397, at *3 (D. Or. May 22, 2020) (citing *Dawson v. Entek Intern.*, 630 F.3d 928, 935 (9th Cir. 2024)); *see also* 42 U.S.C. § 2000e(j) (requiring reasonable accommodation of an "employee's religious observance or practice"); ORS 659A.031(1)(a) (same). However, before reaching the duty to accommodate, the plaintiff must establish a prima facie case with three elements:

> (1) the plaintiff has a bona fide religious belief, the practice of which conflicts with an employment duty;
> (2) she notified her employer of the belief and conflict; and
> (3) the employer subjected her to an adverse employment action because of her inability to fulfill the employment duty.

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). *If* that prima facie case is met, the burden shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the

employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.*[5]

The first element of the prima facie case is at issue in this appeal. The District Court dismissed Ridings' claims based on its conclusion that she "failed to provide nonconclusory allegations concerning the religious nature of [her] objection to the vaccine mandate and a conflict between those religious beliefs and the vaccine mandate." ER-17. This conclusion was correct and rested on sound legal analysis and insightful application of Ninth Circuit precedent to Ridings' allegations.

Ridings' arguments to the contrary misunderstand the purpose of Title VII, rest on non-binding and irrelevant case law, and offer no cogent analysis showing she plausibly alleged a *conflict* between her *religious* beliefs and an employment duty to vaccinate against COVID-19. Moreover, those arguments rest entirely on an issue that Ridings

[5] This two-part framework is different from the eponymous *McDonnell-Douglas* burden-shifting framework that applies to other types of employment discrimination claims. *See, e.g., Walter v. Eugene Sch. Dist. 4J*, No. 6:23 cv 00688 AA, 2024 WL 1367188, at *3-4 (D. Or. March 31, 2024 (applying *McDonnell-Douglas* framework to Title VII discrimination claim only and applying two-part burden-shifting framework to Title VII failure-to-accommodate claim).

did not preserve below or develop on appeal: consideration of matters extraneous to her pleadings.

### A. The first element of a Title VII failure-to-accommodate case requires a bona fide religious belief, the practice or observance of which conflicts with an employment duty.

To plead a prima facie case of failure to accommodate religion, "a plaintiff must allege, among other things, that she holds 'a bona fide religious belief' that conflicts with an employment requirement." *Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). This is the first element of the prima facie case.

When assessing this element on a motion to dismiss, the court's inquiry focuses on (a) whether the plaintiff has plausibly alleged a sincerely held *religious* belief and (b) whether the allegations plausibly show that the *practice or observance* of that religious belief *conflicts with the employment duty* at issue. *See id.* at 1223 (focusing on whether plaintiff "has alleged an actual conflict"); *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) (holding plaintiff "could not satisfy one crucial element of her prima facie case: conflict between her religious belief and employment duties."). Both parts of the inquiry are

necessary and must be met with plausible factual allegations to state a cognizable claim.

### 1. Title VII requires accommodation of religious beliefs, but not secular ones.

The "religion" aspect of this inquiry is necessary because "Title VII does not protect secular preferences." *Tiano*, 139 F.3d at 682. While Title VII broadly defines "religion" to protect "all aspects of religious observance and practice, as well as belief," 42 U.S.C. § 2000e, the statute's protection does not extend to a plaintiff's medical, economic, political, or social preferences. *See, e.g.*, *Tiano*, 139 F.3d at 682-83; *Kamrath v. Addictions Recovery Ctr., Inc.*, No. 1:23-cv-01516-MC, 2024 WL 2785385, at *3 (D. Or. May 30, 2024) ("Title VII does not protect medical, economic, political, or cultural preferences."); *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (explaining that courts must distinguish between conflicts that are "rooted in religious belief" as opposed to ones based on "'purely secular' philosophical concerns") (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

Courts must consider this distinction even at the pleading stage. And while the plaintiff's burden at this stage is "minimal," courts need not take "conclusory assertions of violations of religious beliefs at face

value." *Bolden-Hardge*, 63 F.4th at 1223. As the Second Circuit explained:

> An individual's assertion that the belief [is religious] does not . . . automatically mean that the belief is religious. To the contrary, a threshold inquiry into the 'religious' aspect of particular beliefs and practices cannot be avoided, if [a court is] to determine what is in fact based on a religious belief, and what is based on secular or scientific principles.

*Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) (internal citation omitted) (collecting cases). If the court's assessment of the *factual* allegations contained in the pleadings shows the plaintiff's asserted conflicting belief is plausibly religious in nature, then the court should not "interrogate" or "second guess" the *sincerity* or *reasonableness* of that religious belief. *Bolden-Hardge*, 63 F.4th at 1223.[6] Indeed, a "religious belief need not be consistent or rational to be protected under Title VII." *Keene v. City and Cnty. of San Francisco*,

[6] The first element of the prima facie case requires that the plaintiff show *both* "that (1) 'the belief for which protection is sought [is] religious in [the] person's own scheme of things" and (2) that it is 'sincerely held.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013). Courts are reluctant to second-guess the *sincerity* of a stated belief, but must still assess whether that belief is, in fact, religious in nature. *Id.*

No. 22-16567, 2023 WL 3451687, at *2 (unpublished) (9th Cir. May 15, 2023).

By contrast, if the factual pleadings reflect that the plaintiff's conflicting belief rests solely on personal, political, medical, or other secular preferences, then Title VII does not apply, and no accommodation is warranted. *Cf. Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (finding Title VII protected plaintiff's participation in religious conversion ceremony); *with Tiano,* 139 F.3d at 682-83 (concluding *timing* of plaintiff's religious pilgrimage was personal preference, not religious mandate, and thus unprotected); *and Mason*, 851 F.2d at 51-52 (rejecting plaintiffs' objection to school's vaccination policy because their belief in the body's ability to self-heal was scientific and/or secular, and thus not protected under Title VII).[7]

---

[7] If a secular objection *overlaps* with a religious-based objection, then Title VII will apply. But the complaint must, at minimum, plausibly state a conflict between the *religious* belief and the employment duty at issue; a conflict with the secular belief alone is insufficient. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at L.2, U.S. Equal Emp. Opportunity Comm'n (March 1, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L.

The Third Circuit's opinion in *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017), is illustrative of this distinction and provides a useful roadmap for this analysis. In *Fallon*, the plaintiff sued his former employer, a hospital, under Title VII, alleging it discriminated against him by denying his request for religious exception from a flu vaccination policy and terminating his employment. *Id*. at 488. At the motion to dismiss stage, the district court dismissed the case on the grounds that the plaintiff's stated opposition to vaccination—his alleged belief that the flu "vaccine might do more harm than good"—was "not religious in nature and, therefore, not protected by Title VII." *Id*. at 488-89 & n.2.

On appeal, the Third Circuit affirmed. *Id*. at 489. In so doing, the Third Circuit observed that the dispositive issue was not whether the plaintiff's alleged objection to vaccination was sincere, but rather, *whether that objection was based on a "religious belief under Title VII."* *Id.* at 490 (emphasis added). To resolve this issue, the Third Circuit relied on a three-part definition of religion that it adopted in *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981):

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.

> Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id*. at 491-93 (quoting *Africa*, 662 F.2d at 1032).[8]

The Third Circuit then applied these factors to the plaintiff's allegations, which consisted of a general statement that he agreed with a quote attributed to the founder of Buddhism and his own stated belief that "one should not harm their [sic] own body and [that he] strongly believes that the flu vaccine may do more harm than good." *Id*. at 492.

Regarding the first two factors, the Third Circuit concluded the plaintiff's stated opposition satisfied neither factor because "it does not appear that these beliefs address fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature." *Id*. Rather, it found the plaintiff "simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and

---

[8] The Ninth Circuit has cited favorably to these *Africa* factors. *See Alvarado v. City of San Jose*, 94 F.3d 1223, 1225-31 (9th Cir. 1996) (reviewing a grant of summary judgment in the defendant's favor on a First Amendment claim and relying on *Africa* in assessing whether there was "a cognizable religious interest at issue").

wishes to avoid this vaccine," and explained that "his concern . . . is a medical belief, not a religious one." *Id.*

Likewise, the plaintiff's reference to a statement from Buddhism—"(which might be paraphrased as 'Do not harm your own body')"—did not transform his medical belief into a religious one. *Id.* The Third Circuit explained: "This one moral commandment is an 'isolated moral teaching'; by itself, it is not a comprehensive system of beliefs about fundamental or ultimate matters." *Id.* Rather, the plaintiff's statement reflected only a general belief not to "violate his conscience as to what is right and what is wrong," which was not inherently religious. *Id.*

The Third Circuit also determined that the plaintiff's allegations did not satisfy the third *Africa* factor because the plaintiff's "views are not manifested in formal and external signs, such as 'formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays, and other similar manifestations associated with the traditional religions.'" *Id.* Because the plaintiff's beliefs satisfied none of the *Africa* factors, the

Third Circuit held that his "objection to vaccination is therefore not religious and not protected by Title VII." *Id.*

Notably, the Third Circuit left open the possibility that an anti-vaccination position may, in some circumstances, "be part of a broader religious faith." *Id.* at 493 However, that determination required the court to assess whether the plaintiff's alleged opposition to vaccination (or a different employment duty) is indeed rooted in a religious belief—as opposed to only a general statement of personal preference, or another secular belief. *Id.*; *see also, e.g.*, *O'Hailpin v. Hawaiian Airlines, Inc.*, No. 22-00532 JAO-RT, 2023 WL 8600498, at *9 (D. Haw. Dec. 12, 2023) ("So although an employer's ability to question the line between sincerely held belief and secular preference may be limited, it nonetheless exists.").

In line with that reasoning, and specific to COVID-19 vaccination requirements, the U.S. Equal Employment Opportunity Commission ("EEOC") promulgated guidance to employers navigating claimed religious exemptions, explaining that "although Title VII prohibits employment discrimination based on religion, an employee's request for an exemption can be denied on the ground that the employee's belief is

not truly religious in nature[.]" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021). That guidance explains: "objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII." *Id.* (citing *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at L.2 to L.3, U.S. Equal Emp. Opportunity Comm'n (March 1, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L (https://perma.cc/73RS-7L62). In sum, because Title VII requires accommodation only of religious beliefs, the court's inquiry on a motion to dismiss must confirm that the plaintiff's allegations have plausibly stated a *religious* conflict with an employment duty.

### 2. Plaintiffs must also plausibly allege an *actual conflict* between an employment duty and a religious observance or practice.

As part of the first element inquiry, the court must also confirm that the plaintiff's factual allegations plausibly state an *actual conflict*

between the employment duty and a religious observance or practice.[9] *Heller*, 8 F.3d at 1439; *Tiano*, 139 F.3d at 683 (finding plaintiff "could not satisfy one crucial element of her prima facie case: conflict between her religious belief and employment duties"); *Bolden-Hardge*, 63 F.4th at 1223 (inquiring whether plaintiff "has alleged an actual conflict"). The alleged conflict must be objective, not subjective, and bear a rational connection between the employment requirement and religious belief at issue. *See Bolden-Hardge*, 63 F.4th at 1223.

While the Ninth Circuit has, of yet, had few occasions to address the nuances of this inquiry, federal district courts in this Circuit and beyond[10] have had ample opportunity to develop this analysis in the

---

[9] This assessment has some overlap with but differs from the analysis relevant to the second element of the plaintiff's prima facie case, which focuses on whether the plaintiff provided enough information to *notify* her employer of the belief and conflict. *See Heller*, 8 F.3d at 1439 ("A sensible approach [to the second element] would require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements."). By contrast, the court's assessment of the first element focuses on the sufficiency of the plaintiff's pleadings in *alleging* such conflict exists with plausible specificity.

[10] *See, e.g.*, *Harper v. Harbor Health*, No. 21-cv-11562-AK, 2022 WL 1971883 at *3 (D. Mass. July 27, 2022) (holding "bald assertions" in plaintiff's complaint are "insufficient to state a plausible claim for

context of religious exemptions to COVID-19 vaccines and testing requirements. *See, e.g.*, *Prodan v. Legacy Health*, 716 F. Supp. 3d 1044, 1049-51 (D. Or. 2024) (collecting cases); *Devito v. Legacy Health*, No. 3:22-cv-01983-YY, 2024 WL 687943, at *3 (D. Or. Feb. 19, 2024) (collecting cases); *Gage v. Mayo Clinic*, No. 22-cv-2091, 2023 WL 3230986, at *3 (D. Ariz. May 3, 2023), *aff'd* 2025 WL 1733503 (9th Cir. June 18, 2025); *Cruz v. Kaiser Foundation Hosps.*, 773 F. Supp. 3d 1045, 1052 (D. Haw. 2025).

Taken together, those cases demonstrate that to satisfy the "conflict" inquiry on a motion to dismiss, the plaintiff's complaint must "include . . . *specific factual allegations* demonstrating an actual conflict between his religious belief(s) and his employer's vaccine mandate."

---

religious discrimination," in part, because they lack any facts suggesting that "a bona fide religious practice conflicted with Harbor Health's COVID-19 policy and that he was, in fact, terminated *because of* those religious beliefs.") (emphasis in original); *Troulliet v. Gray Media Grp., Inc.*, No. 22-5256, 2023 WL 2894707, at *4 (E.D. La. April 11, 2023) (finding insufficient plaintiff's summary statement that "the COVID-19 vaccine violates her religious belief" where "she does not allege what those beliefs are"); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) ("Bald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII.") (citation omitted).

*Kamrath*, 2024 WL 942092, at *2 (emphasis added); *Sample v. Health*, No. 3:23-cv-1554-AR, 2024 WL 5470183, at *3 (D. Or. Nov. 27, 2025) (complaint "must make nonconclusory factual allegations sufficient to allow the court to reasonably infer that [employer] failed to accommodate their religious beliefs"). A "threadbare reference" to the plaintiff's religious beliefs is insufficient to state an actual conflict because "vague expressions of sincerely held [religious] beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations." *Kather*, 2023 WL 4865533, at *3-5; *McCune v. Asante Rogue Regional Medical Ctr., LLC*, No. 1:23-cv-799-CL, 2024 WL 3290348, at *3 (D. Or. July 3, 2024).

"Consistent with this rule, several district courts have dismissed Title VII complaints for making conclusory allegations regarding the plaintiff's religious views that do not describe the conflict between those views and the former employer's policies." *Gamon v. Shriners Hosp. for Children*, No. 3:23-cv-00216-IM, 2023 WL 7019980, at *2 (D. Or. Oct. 25, 2023); *see also Cruz*, 773 F. Supp. 3d at 1052 (holding that cursorily invoking a religious belief is insufficient to identify any religious tenet or teaching in conflict with employment duty). In reviewing case law on

this issue, District of Oregon courts have persuasively observed "that these cases generally fall into three categories: (1) those in which plaintiff merely alleges a general statement of religious conflict without identifying a conflicting belief; (2) those in which plaintiffs allege a religious belief coupled with a secular objection; and (3) those in which plaintiffs allege a religious belief and a general statement that acquiring the vaccine is in conflict with that belief." *Devito*, 2024 WL 687943, at *3-5; *Prodan*, 716 F. Supp. 3d at 1049-51 (adopting framework).

In the first category, allegations that only "generally emote[] religious opposition to Defendant's authority" without identifying a conflicting belief are insufficient to survive a motion to dismiss. *Id.* at 1049. For example, allegations that an employer "exalts itself in purporting to place an unbeliever in a position to judge the Word of God" are "too broad and vague," without more, to state a conflict with an employment duty. *Kather*, 2023 WL 4865533, at *3.

Similarly, allegations that plaintiffs are "devout Christian[s]" whose "sincerely held religious beliefs conflicted with receiving the COVID-19 vaccines" are insufficient because they are entirely

conclusory and "fail to describe any religious belief or practice that conflicted" with the employment duty. *Sample*, 2024 WL 5470183, at *3. These cases demonstrate that, while the plaintiffs' pleading burden is "minimal," they must still meet the "low bar" of identifying an actual conflict between a religious observance or practice and an employment obligation. *Dozier v. St. Charles Health Sys., Inc.*, No. 1:23-cv-1080-MK, 2024 WL 4005789, at *4 (D. Or. Aug. 29, 2024). Conclusory and vague allegations lacking detail of an actual conflict do not meet that low bar. *E.g.*, *Gamon*, 2023 WL 7019980, at *3 (dismissing general assertion of conflict with religious belief because it failed to "describe the conflict with factual specificity").[11]

In the second category of cases, "many courts have held that allegations of a religious belief coupled with a secular objection fail to

---

[11] *See also Cruz*, 773 F. Supp. 3d at 1052 (dismissing as insufficient plaintiff's general allegation that vaccine requirement "goes against her religious beliefs"); *Gage*, 2023 WL 3230986, at *3 (finding allegations insufficient because plaintiff did "not explain her religious beliefs" nor "how practicing them conflicted with her employment duties"); *McCune*, 2024 WL 3290348, at *3 (allegation that plaintiff "identifies as 'devoutly religious'" failed "to explain how practicing his Christian beliefs actually conflicted with the employment requirement to take the COVID-19 vaccine"); *Kamrath*, 2024 WL 942092, at *2 (same).

plead a bona fide religious belief in conflict with an employment duty because the objection itself is secular." *Prodan*, 716 F. Supp. 3d at 1049-50. For example, courts routinely dismiss Title VII claims where the plaintiff's allegations reflected only medical-based concern about vaccination safety, without identifying any overlapping religious-based conflict. *See, e.g.*, *Detwiler*, 2022 WL 19977290, at *4 ("Plaintiff's allegations – which center on her belief that COVID-19 antigen tests are carcinogenic – fail to establish sincere religious opposition under this framework."); *Bartholomew v. Washington*, 725 F. Supp. 3d 1225, 1233 (W.D. Wa. 2024) (finding plaintiff's allegations reflected opposition to vaccination based on a secular belief in "natural immunity," not an anti-abortion stance, and were therefore insufficient to state a religious-based conflict with vaccine mandate); *Bry v. Asante*, No. 1:24-cv-1185-AA, 2025 WL 1332214, at *4 (D. Or. May 7, 2025) (finding plaintiff's objections to vaccination were based on secular concerns about its "safety, efficacy, and long[-]term health effects," and thus unprotected), *appeal filed* No. 25-3625 (June 9, 2025); *see also Fallon*, 877 F.3d at 492 (alleged belief that the flu "vaccine might do more harm than good"—was "not religious in nature and, therefore, not protected by Title VII").

Courts also generally agree that a plaintiff's belief in her right to exercise God-given free will is "unquestionably a secular opinion" and does not state a religious-based conflict with an employment duty. *Bowerman v. St. Charles Health Sys., Inc.*, No. 6:23-cv-01488-MC, 2024 WL 3276131 (D. Or. July 1, 2024) (holding "'free will" opposition to a vaccine mandate is unquestionably a secular opinion" and that "[w]ithout more, [plaintiff] has failed to offer details or specifics of her religious beliefs that would cause a conflict with the vaccine mandate"), *appeal filed* No. 24-5002 (Aug. 15, 2025); *Nogowski v. St. Charles Med. Ctr.*, No. 6:23-cv-0027-AA, 2023 WL 7003702, at *4 (D. Or. October 24, 2023) (allegation of God-given free will "fails to allege facts giving rise to an inference of sincere religious opposition under this framework"). Indeed, to hold otherwise would amount to a "'a blanket privilege'" for employees and a "limitless excuse for avoiding all unwanted obligations" required by their employers. *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 456-66 (M.D. Pa. 2022) (quoting *Africa*, 622 F.3d at 1030-31). Such a result would leave employers unreasonably vulnerable to baseless allegations of discrimination—in tension with the "primary

objective" of Title VII, which "is not to provide redress but to avoid harm." *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

In the third category of cases, there is some disagreement among courts addressing motions to dismiss when plaintiffs allege a religious belief and a simple statement that obtaining the COVID-19 vaccine conflicts with that belief. *Prodan*, 716 F. Supp. 3d at 1050-51. On the one hand, courts have found insufficient allegations that taking the COVID-19 vaccine conflicted with a general religious belief in "bodily integrity" or "purity." *See, e.g.*, *Ruscitti v. Legacy Health*, No. 3:23-cv-00787-JR, 2023 WL 8006269, at *1 (D. Or. Sept. 27. 2023), *adopted* 2023 WL 8006269 (D. Or. Nov. 16, 2023) (finding insufficient allegation that "[a]s a devout Christian, plaintiff has serious objections to taking the vaccine because it would constitute violating her bodily integrity and tainting the purity of her body"); *Trinh v. Shriners Hosps. For Child.*, No. 3:22-cv-01999-SB, 2023 WL 7525228, at *10 (D. Or. Oct. 23, 2023) (concluding plaintiff's generalized assertion of Christian and Buddhist beliefs in "bodily integrity" and "purity" lacked "sufficient factual detail on, among other things, what [plaintiff] considered 'tainting the purity

of her body'" and so did not plausibly state a religious-based conflict with vaccination).[12]

Meanwhile, other courts have found similar allegations sufficient, so long as they identify a religious belief with enough specificity to draw the *reasonable inference* that the conflict with vaccination is rooted in a religious belief. *See Prodan*, 716 F. Supp. 3d at 1051 (finding allegation that "the body is a 'temple' of 'God' or 'the Holy Spirit'" and that the COVID-19 vaccine violates that belief was sufficient to state religious-based conflict); *DeVito*, 2024 WL 687943, at *5 (same). Even in such cases, the plaintiff's religious belief must be alleged with at least some level of factual specificity. *See, e.g.*, *Kather*, 2023 WL 4865533, at *5 (finding sufficient allegation that "Satan is at work with the whole forceful COVID-19 mandate" and plaintiff had the "God-given right to refuse a vaccination that goes against everything [she] believe[s] in" because "[d]espite not articulating her religious conflict with great

---

[12] *See also Thornton v. Ipsen Biopharmaceuticals, Inc.*, No. CV 23-11171-JCB, 2023 WL 7116739, at *4 (D. Mass. Oct. 26, 2023) (allegations that "what God has created is perfect" and that vaccines would "defil[e] [the plaintiff's] perfectly created body" insufficient to state a plausible religious-based conflict with employment duty).

clarity and precision, it can be inferred that [the plaintiff's] religious-based hostility toward the COVID-19 vaccine mandate informs a religious opposition to receiving a COVID-19 vaccine"). But a "vague expression" of or "threadbare reference" to the plaintiff's religious beliefs is still insufficient. *Id*. at *3.

In sum, it is well-settled that the plaintiff must offer specific factual allegations identifying a *religious* belief, *the practice or observance* of which *actually conflicts* with the employment duty at issue. Absent such allegations, a complaint does not satisfy the first element of the prima facie case and fails on a motion to dismiss.

### B. Ridings has not met her prima facie case because she has not plausibly alleged a religious belief in conflict with vaccination against COVID-19.

#### 1. This Court should consider only the allegations in Ridings' Complaint because Ridings did not preserve the issue of consideration of the extraneous letter below or before this Court.

Ridings' argument rests entirely on the unwarranted assumption that the unsigned letter provided as an exhibit to her counsel's declaration in support of her response to PeaceHealth's motion to dismiss—which was *not* expressly referenced in or attached to the Complaint and was *not* considered by the courts below—can

nevertheless be considered by this Court on appeal. *See* Op. Br. at 3, 13-15 (relying on letter as sole support for position that Ridings adequately alleged religious beliefs conflicting with PeaceHealth's vaccine requirement). In fact, aside from one glancing reference to the entirety of her Complaint, Ridings' brief never identifies any *specific* allegations *contained in the Complaint* that adequately state a claim of religious discrimination. *Id*. at 4. By failing to do so, Ridings essentially concedes that her Complaint is facially insufficient and requires reference to extraneous material. That position is fatal, as the extraneous letter properly was not considered below, and Ridings failed to preserve consideration of that document for this appeal.

In placing sole reliance on her extraneous unsigned letter, Ridings misapprehends the procedural history of this case in two important ways. To begin with, she claims that the letter "was made part of the record through" her counsel's declaration and implies in a footnote, without outright declaring, that the letter was "incorporated by reference in the Complaint." *Id*. at 14 n. 2. Not so. Despite opportunity to do so, Ridings opted not to attach, quote, or even reference that letter in her Complaint. *See* Fed. R. Civ. P. 10(c) (providing "A copy of a

written instrument that is an exhibit to a pleading is part of the pleading for all purposes.”). Indeed, the salient provisions of the Complaint, paragraphs six and ten, do *not* mention the letter; they merely state that Ridings is a “devoutly religious member of the Christian faith” who “applied for a religious exemption on or about August 27, 2021.” ER-22. Consequently, the Magistrate Judge and the Article III judge properly confined their analyses to Ridings’ Complaint. *See, e.g.*, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1039 (9th Cir. 2010) (holding “the mere mention of the existence of a document is insufficient to incorporate the contents of a document”).

Nevertheless, Ridings misleadingly claims—in a short footnote lacking developed argument—that it “was appropriate for [her] to assume the [District Court] had considered counsel’s Declaration and attached exhibit.” Op. Br. at 14 n. 2.[13] The record does not support this unreasonable assumption. Neither the F&R nor Judge Aiken’s Order

[13] This footnote in Ridings’ brief only purported to justify her failure to amend her Complaint because, according to Ridings, it “would have been futile because the District Court had already considered the substance of the exemption request and rejected it as ‘too conclusory.’” Op. Br. at 14 n. 2.

mention the letter; nor do they address the legal issue whether material extraneous to the Complaint should be considered. Instead, the analysis contained in the F&R is confined to paragraphs six and ten of the Complaint, with no discussion of the letter or the propriety of considering extraneous materials. ER-7. Similarly, Judge Aiken's Order refers *only* to the pleadings and to no extraneous materials. *See* ER-15, 17. The record thus establishes that the Magistrate Judge and the Article III Judge confined their analyses to the four corners of Ridings' Complaint and did *not* consider the extraneous statements contained in the unsigned letter.[14] Ridings' assumption otherwise is objectively unreasonable.

Disregarding this procedural background entirely, Ridings bases her appeal almost exclusively on the extraneous letter. Ridings essentially claims, without assigning error in her brief, that the District Court mistakenly failed to consider the statements contained in the

---

[14] In portions of her brief, Ridings appears to at least nod to this reality. *See, e.g.*, ER-14 n.2 ("It is not entirely clear whether Judge Aiken considered the Plaintiff's exemption request but nor is it clear that she did not."); ER-15 ("The District Court effectively ignored the Plaintiff's statements.").

letter when assessing the adequacy of her Complaint. This claim of error is unpreserved for several reasons.

i. Ridings failed to preserve below her argument that the letter should have been considered.

First, as explained above, it should have been abundantly clear to Ridings from the face of the F&R that the Magistrate Judge did *not* consider the extraneous letter. If Ridings believed this was error, she should have filed objections to the F&R, which she failed to do. *See* ER-9 (informing Ridings of the time limit for filing objections to the non-final F&R and stating that failure to file such objections within the specified time "may waive the right to appeal the district court's order," citing *Martinez v. Ylst.*, 951 F.2d 1153, 1157 (9th Cir. 1991)).[15]

Second, after reviewing PeaceHealth's objections to the F&R, it should also have been abundantly clear to Ridings that PeaceHealth

[15] While "[a] party prevailing before a magistrate judge need not object to the magistrate's report and recommendation in order to preserve its right to argue an alternative theory in support of the recommendation on appeal," such a result follows only where that party properly raises the legal issue in the appellate court. *United States v. Willis*, 431 F.3d 709, 713 n. 4 (9th Cir. 2005) (*citing McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980)). As argued below, Ridings has not properly raised the incorporation-by-reference issue on appeal. *See infra.* at pp. 43-47.

*never once* mentioned the unsigned letter. Nor did PeaceHealth raise the legal issue whether materials extraneous to the Complaint should be considered by the Court in deciding its motion to dismiss. If Ridings believed that PeaceHealth's analysis incorrectly confined itself to the allegations in the Complaint, that the Magistrate Judge erred by not considering the extraneous letter, or that the District Court was required to consider the letter, she should have filed a response to PeaceHealth's objections making these arguments. Instead, Ridings elected not to file any response.

In failing to file any response, Ridings effectively conceded that the District Court's review was properly confined to the allegations contained in the Complaint. As the proponent of the letter's consideration as extraneous evidence supporting her allegations, Ridings bore the burden to bring the matter to the district court's attention. *See, e.g.*, *Dzung Chu v. Oracle Corp.*, 627 F.3d 376, 386 (9th Cir. 2010) ("onus was on Plaintiffs to direct the district court's attention to . . . evidentiary principles under which the evidence in question could be deemed admissible" and their "fail[ure] to respond to Defendant's objections, and to then challenge the district court's evidentiary rulings

on appeal, is to invite the district court to err and then complain of that very error," a tactic that the Ninth Circuit "cannot countenance"). In other words, if Ridings believed it was error to not consider the letter, it was incumbent on her to either object to the F&R or at least to raise the issue in response to PeaceHealth's objections. Her failure to take either action is fatal to her argument on appeal.

Under the Federal Magistrate Act, "[a] judge of the [district] court shall make a de novo determination of *those portions* of the report or specified proposed findings or recommendations *to which objection is made*." 28 U.S.C. § 636(b)(1)(C) (emphasis added). As recognized by the Supreme Court in *Thomas v. Arn*, 474 U.S. 140, 149 (1985), "[t]he statute does not on its face require *any* review at all, by either the district court *or the court of appeals*, of *any issue* that is not the subject of an objection." (Emphasis added). *See also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."

(emphasis in original)); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (district courts are not required to review "any issue that is not the subject of an objection").

Here, because Ridings (and PeaceHealth) did not object to the Magistrate Judge's unwillingness to consider the unsigned letter, that issue was not subject to review by the Article III judge, who accordingly did not consider the extraneous letter. Therefore, the issue of whether the letter was incorporated by reference in the Complaint was not preserved below; consequently, it is not properly presented to this Court. *Thomas*, 474 U.S. at 149 (the Federal Magistrate Act does not require appellate review "of any issue that is not the subject of an objection").

ii. Ridings also fails to develop any argument as to why that unpreserved assignment of error should be considered in this Court and so waives the issue.

Even if Ridings' failures in the District Court are somehow excused, she also fails to adequately raise *on appeal* the issue whether the District Court erred in declining to consider the extraneous letter when deciding PeaceHealth's motion to dismiss. Instead, Ridings merely assumes, without expressly raising the issue and *without*

*argument*, that the letter is "part of the record," was considered by the District Court below, and can be considered on appeal. This approach violates the letter and spirit of Federal Rules of Appellate Procedure 28 because it deprives this Court of the structured, issue-driven advocacy that appellate review demands. *See* Fed. R. App. P. 28(a)(8)(A) (requiring that the argument section "contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."). Ridings' failures amount to a waiver. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (the "bare assertion of an issue does not preserve a claim" without specific and distinct argument in the opening brief).

First, Ridings fails to identify in her brief any asserted error regarding the District Court's patent unwillingness to consider the unsigned letter attached to her attorney's declaration. Moreover, Ridings fails to provide any argument regarding this unassigned error. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly *argued and raised* in a party's opening brief are waived).

To the extent Ridings makes *any mention* regarding whether the District Court considered, or did not consider, the unsigned letter, it is contained in an oblique footnote directed to the issue of whether filing an amended pleading would have been futile. Op. Br. At 14 n. 2. Even if *arguendo* this glancing reference can be viewed as an "argument" regarding why the District Court erred by not considering the letter, it was made only in passing without adequate development and is hence properly viewed by this Court as waived. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."). Furthermore, substantive arguments raised only in footnotes are also generally deemed waived. *See, e.g.*, *Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 962 n. 8 (9th Cir. 2014).

Ridings' failure to include any specific or distinct argument explaining how the District Court erred is fatal to her claim on appeal. This Court "has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." *Indep. Towers of Washington*, 350 F.3d at 925 (quoting *Greenwood v.*

*Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Here, the issue whether the unsigned letter should have been considered by the District Court would have benefitted from being explicitly raised and fully briefed. As recognized by this Court, the judicially created "incorporation-by-reference" doctrine, while "straightforward in its purpose" is "not always easy to apply" and raises many questions. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Ridings' cavalier approach to this issue below and in this Court has prevented such briefing and careful judicial consideration.

Ridings' failure to offer *any* developed argument regarding the incorporation-by reference doctrine below and in her opening brief constitutes a waiver of that issue on appeal. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited"); *Willis*, 431 F.3d at 714 n. 4 (failure to raise alternative grounds for affirmance of a magistrate's findings and recommendations coupled with failure to adequately address the issue in the opening brief is a waiver of those grounds). Accordingly, this Court should not consider the unsigned letter attached to Ridings' counsel's declaration and should confine

itself, as both the Magistrate Judge and District Court Judge did, to the four corners of the Complaint in assessing the adequacy of Ridings' allegations.

### 2. Ridings' allegations are threadbare and do not state an *actual conflict* between an employment duty and her religious beliefs.

As recounted above, Ridings' Complaint alleges that she is "a devoutly religious member of the Christian faith" and that, "as a devout Christian, [she] did not believe it was consistent with her faith to take the [COVID-19] vaccine." ER-22. Ridings also alleges that she objected to COVID-19 vaccination because she was pregnant, that "there had been no studies on the effects of the vaccines on the unborn," and that her "mother had suffered a severe and life-threatening reaction to the COVID-19 vaccine." ER-22. Confining its *de novo* analysis to the four corners of Ridings' Complaint (as the lower court did), this Court should hold that Ridings has not met her prima facie case because those allegations do not plausibly state a religious belief in conflict with vaccination against COVID-19.

To begin with, Ridings does not allege (nor in her opening brief identify) any *specific* allegations contained in the Complaint that

adequately state a claim of religious discrimination. With that failure, Ridings essentially concedes that her Complaint is facially insufficient and does not state a prima facie case for her religious failure-to-accommodate claims. At most, Ridings generally references her Complaint to assert that she has "sufficiently articulated religious beliefs, within the scope of Title VII, in conflict with taking the COVID-19 vaccine." Op. Br. at 18. But that undeveloped argument does not alter the fact that the allegations in her Complaint utterly fail to meet that standard and are patently insufficient.

As a general matter, Ridings's allegation that she "did not believe it was consistent with her faith to take the [COVID-19] vaccine" is so conclusory that the Court need not accept it as true. *See Daniels Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010) (principle of not accepting conclusory allegations); *Trinh*, 2023 WL 7525228, at *10 (rejecting as conclusory substantially similar allegations). Ridings alleged no factual detail to support her conclusory recitation of the first element of the prima facie case; consequently, she has failed to state plausible failure-to-accommodate claims. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.”). This Court can and should dismiss her appeal on this basis alone.

However, even if the Court were to accept as true Ridings’ allegation that she applied for exception to COVID-19 vaccination due to her “Christian faith,” that statement alone is insufficient to meet the first element of the prima facie case. For example, what Christian beliefs does Ridings hold that conflict with PeaceHealth’s vaccine requirement? The Complaint does not say. Thus, Ridings’ allegations only “generally emote[] religious opposition to Defendant's authority to mandate vaccines,” without identifying any religious observance or belief in conflict with COVID-19 vaccination. *Kather*, 2023 WL 4865533, at *5 (holding “facts that hint at a religious belief but do not specify how those beliefs conflicted with receiving a COVID-19 vaccine” are insufficient). Such allegations are too vague to state a plausible conflict and fall squarely within the first group of cases deemed categorically insufficient by District of Oregon courts. *Prodan*, 716 F. Supp. at 1049-51; *see also McCune*, 2024 WL 3290348, at *3 (finding insufficient allegation that plaintiff “identifies as ‘devoutly religious’” because he failed “to explain how practicing his Christian beliefs actually conflicted

with the employment requirement to take the COVID-19 vaccine"); *Kamrath*, 2024 WL 942092, at *2 (same); *Cruz*, 773 F. Supp. 3d at 1052 (finding insufficient allegation that vaccine requirement "goes against [plaintiff's] religious beliefs"); *Gage*, 2023 WL 3230986, at *3 (same). Notably, the District Court reached this same correct conclusion, finding Ridings "failed to provide nonconclusory allegations concerning the religious nature of [her] objections to the vaccine mandate and a conflict between those religious beliefs and the vaccine mandate." ER-17.

Ridings' other vaccine-related allegations are also insufficient because the *only* plausible inference they support is that she opposed COVID-19 vaccination based on *secular* concerns. *See* ER-22 ("In addition, Plaintiff was pregnant and there had been no studies on the effects of the vaccine on the unborn, and Plaintiff's mother had suffered a severe and life-threatening reaction to the COVID-19 vaccine. Accordingly, Plaintiff applied for a religious exception to the vaccine mandate on or about August 27, 2021."). Such allegations express opposition to the COVID-19 vaccine based on medical concerns about its safety—a reason that is secular and unprotected by Title VII. *See, e.g.*,

*Fallon*, 877 F.3d at 488-89 & n. 2 (alleged belief that the flu "vaccine might do more harm than good"—was "not religious in nature and, therefore, not protected by Title VII"); *Detwiler*, 2022 WL 19977290, at *4 ("Plaintiff's allegations – which center on her belief that COVID-19 antigen tests are carcinogenic – fail to establish sincere religious opposition under this framework.").

In sum, Ridings' Complaint does not, on its face, plausibly state a *religious* belief or practice in conflict with an employment duty to vaccinate against COVID-19. Accordingly, she has not met the first element of their prima facia case, and the District Court was correct to dismiss her claims.

#### 3. Even if the Court considers the extraneous letter, Ridings does not state a religious-based conflict with COVID-19 vaccination.

Assuming *arguendo* that the Court looks beyond the procedural defects inherent in Ridings' unpreserved request that it consider matters extraneous to her pleadings, it should find that the letter attached to Ridings' response brief also does not plausibly state a religious belief in conflict with COVID-19 vaccination. In the extraneous letter, Ridings primarily expresses objection to COVID-19 vaccination

based on her concerns about the newness of the vaccine, the lack of clinical trials for pregnant women, and the possibility of adverse reactions. *See* ER-51 ("I have considered the vaccine's risk for myself and my babies, and find that the potential harm greatly conflicts with my religious beliefs. I understand this is a new vaccine, and the safety of it cannot yet be guaranteed."); ER-51 ("I will not willingly introduce something that has potential, large or small, to harm or kill my body or children. I have vowed to love, care for, and protect my children in the best way that I know."). These reasons are plainly secular and thus unprotected. *See, e.g.*, *Dozier*, 2024 WL 4005789, at *4 (concerns about vaccine's side effects and safety are unprotected medical beliefs).

As to her *religious* beliefs, Ridings make three broad statements, none of which plausibly state a religious practice or observance in conflict with COVID-19 vaccination.

*First*, Ridings expresses a belief that her "body is a temple," which she then couples with *secular* objections to vaccination relating to its safety. For example, Ridings states:

- "With reports of injury and death to vaccinated people, breastfed children, and unborn children, and insufficient trials

to prove safety, *I cannot in good conscience take this vaccine and potentially cause harm/death to my body, my child, or my unborn baby*. This is against my religious beliefs in which I firmly believe: I must honor my body, which is my temple for God, *and I must not harm my children or unborn babies*."

- "I must honor and protect my body, my temple. *This includes declining a vaccine that has been shown* [sic] *potential to cause bodily harm*."

ER-51-52 (emphasis added). Even construed in her favor, these statements demonstrate that Ridings requested an exception to PeaceHealth's COVID-19 vaccine requirement based on her secular objections to vaccination—specifically, her concern about the safety of the vaccine for herself and her children. While Ridings attempts to tie those secular, medical objections to her religion by offering a nebulous reference to her belief to "honor and protect" her body, that general reference lacks any detail plausibly demonstrating that this vague belief conflicted with COVID-19 vaccination. *See Craven v. Shriners Hosps. For Child.*, No. 3:22-cv-01619-IM, 2024 WL 21557, at *4 (SD. Or. Jan 2, 2024) (finding despite religious conviction that plaintiff's "body is

a temple of the Holy Spirit," that plaintiff's objection that the COVID-19 vaccine was "unsafe" and could "cause serious harm and even death to the body" was "decidedly secular" and "scientific and medical, not religious").

*Second,* Ridings expresses a belief in taking "steps to support [her] natural God-given immune system." ER-52. When viewed alongside her secular concerns about the "uncertainties surrounding the safety of the vaccine," this statement is akin to an isolated moral teaching that "is not a comprehensive system of beliefs about fundamental or ultimate matters." *See Fallon*, 877 F.3d at 492 (holding the plaintiff's reference to a statement from Buddhism—"which might be paraphrased as 'Do not harm your own body'"—did not transform his medical belief into a religious one); *Cruz*, 773 F. Supp. 3d at 1052 (cursorily invoking a religious belief is insufficient to identify any religious tenet or teaching in conflict with an employment duty). Thus, this statement also does not plausibly state a religious belief or observance in conflict with COVID-19 vaccination.

*Finally*, Ridings states: "Though the aborted fetal cells used to create vaccinations in the 1970s and 1980s may be far removed from

today's vaccine, they still originate from those aborted children. The practice of using an aborted child's body for science against his will violates my religious conscience." ER-52. To be sure, if a plaintiff clearly alleges Christian-based beliefs in the sanctity of life and opposition to taking a vaccine derived from aborted fetal cells based on those beliefs, then the plaintiff might meet the "fairly minimal" burden of alleging a conflicting bona fide religious belief. *See Keene*, 2023 WL 3451687, at *1. But here, while Ridings may have sincere religious objections to abortion (which PeaceHealth does not question), her pleadings do not state an objection to *the* COVID-19 vaccine based on those beliefs. At most, Ridings states a religious opposition to vaccines from the 1970s and 1980s, which she states were derived from aborted fetal cell lines. However, she recognizes that the COVID-19 vaccine is "far removed" from those vaccines. Coupled with her consistent statements regarding concerns about the safety of the vaccine during pregnancy, Ridings' statement does not plausibly connect her religious anti-abortion beliefs that might have applied to vaccines from the 1970s and 1980s to her objection to the COVID-19 vaccine, developed nearly 50 years later.

In sum, even if the Court overlooks the fact that Ridings did not preserve either below or in this Court the issue of consideration of the extraneous letter, it should hold that Ridings has not stated a religious-based conflict with COVID-19 vaccination and affirm the District Court's dismissal of her claims on this alternative ground.

### C. Ridings' arguments are irrelevant or incorrect, and do not establish that she met her prima facie case.

Despite the facially secular nature of her objection to COVID-19 vaccination (as expressed both in the Complaint and the extraneous letter, if considered), Ridings nonetheless argues that she has stated a prima facie case for a failure-to-accommodate claim. Op. Br. at 2, 18. But she provides no cogent explanation of why this is true.

Instead, Ridings heavily quotes from the letter extraneous to her pleadings then asserts, *without* any developed analysis regarding why the lower courts should have considered that extraneous material, that the District Court "effectively ignored the Plaintiff's statements." Op. Br. at 15. But, as explained above, the District Court's decision to confine its analysis to the pleadings was not error where Ridings' Complaint did not even mention that document, let alone expressly incorporate its contents. And in any event, by failing to assign error to

that issue on appeal, Ridings has waived it. Consequently, her arguments resting upon that procedurally defective foundation collapse upon themselves and fail.

Ridings also raises several other unsupported and irrelevant arguments about the meaning of "religion" under Title VII. As explained below, all are meritless and do not alter the result here.

#### 1. Ridings fails to understand that she did not meet the minimum burden of alleging *facts* showing a religious-based conflict with vaccination.

To begin with, Ridings' assertion that the District Court "imposed an impossibly high burden" by assessing whether she had alleged a *religious*-based objection to COVID-19 vaccination is unsupported and incorrect. Op. Br. at 15. It is well-settled in this Circuit and beyond that, even at the pleading stage, a plaintiff must meet the "minimum" burden of alleging *facts* plausibly showing her asserted conflicting belief is religious in nature, as opposed to secular. *See, e.g.*, *Bolden-Hardge*, 63 F.4th at 1223; *Tiano*, 139 F.3d at 682-83; *Mason*, 851 F.2d at 51-52; *Fallon*, 877 F.3d at 492. Indeed, courts assessing Title VII claims on motions to dismiss need not take "conclusory assertions of violations of religious beliefs at face value," *Bolden-Hardge*, 63 F.4th at 1223, and

may assess whether the alleged conflict is with a religious belief, rather than a secular preference, *see, e.g.*, *Tiano*, 139 F.3d at 682-83; *Fallon*, 877 F.3d at 490; *Mason*, 851 F.2d at 51-52; *Callahan*, 658 F.2d at 683. Therefore, to the extent the District Court's rationale required it to assess the "religious" nature of Ridings' alleged beliefs, this was *not* error.

As shown above, the District Court properly conducted that assessment and concluded that the only *alleged conflicts* in Ridings Complaint were either conclusory or rested solely on secular objections to vaccination. ER-6-9. Ridings offers no cogent argument rebutting this conclusion. *See* Op. Br. at 13-19. While she argues it is "important to understand in full [her] lengthy and detailed description of her faith and its impact on her decision to seek an exemption," Op. Br. at 13, Ridings did not preserve consideration of that issue for this Court. Even had Ridings preserved that issue, the fact that her letter expresses secular objections to COVID-19 vaccination in proximity to vague descriptions of other religious beliefs does not transform her secular objections into religious ones. *See Tiano*, 139 F.3d at 682-83 (concluding *timing* of plaintiff's religious pilgrimage was personal preference, not

religious mandate, and thus unprotected); *Fallon*, 877 F.3d at 492 (plaintiff's reference to a statement from Buddhism did not transform his medical objection into a religious one).

### 2. Ridings fails to understand the principle that, while a religious belief may be irrational, the belief must nevertheless bear some rational connection to the employment duty with which it is allegedly in conflict.

Ridings incorrectly argues that Title VII does not require an "objectively rational connection between her belief system and the conflict with her workplace requirements." Op. Br. at 8. Not so. This argument conflates the permissive lens courts apply to alleged religious beliefs—which need not be objectively reasonable (*see Keene*, 2023 WL 3451687, at *2)—and the standard for alleging a *conflict* between those religious beliefs and an employment practice.

Ninth Circuit precedent holds that Ridings' prima facie pleading burden under Title VII requires an *actual conflict* between an employment requirement and a bona fide religious belief. *Bolden-Hardge*, 63 F.4th at 1222 ("To plead a prima facie case of failure to accommodate religion under Title VII . . ., a plaintiff must allege, among other things, that she holds 'a bona fide religious belief' that

conflicts with an employment requirement.”). Indeed, the Ninth Circuit’s approach to this issue in *Bolden-Hardge* reflects an objective analysis of whether the identified religious belief and a workplace requirement are in conflict. *See id.* In that case, the plaintiff held a religious belief that she had to bear allegiance first and foremost to the “Kingdom of God” and sought employment with the State of California, which required an oath of allegiance and support to the state and federal constitutions. *Id.* at 1219, 1223. The plaintiff sued under Title VII, asserting this oath conflicted with her religious beliefs because she could not “swear[] primary allegiance to any human government.” *Id.* On a motion to dismiss, the State argued that no conflict existed because the oath did not expressly require the plaintiff to “pledge loyalty to government *over* religion.” *Id.* at 1223 (emphasis in original). The trial court agreed and ordered dismissal. *Id.*

On appeal, the Ninth Circuit reversed. *Id.* at 1218. It reasoned that “construing all facts and inferences in [the plaintiff’s] favor, it is possible to understand the oath as requiring state employees to place their allegiance to the federal and state constitutions over their allegiance to God for the purposes of their work.” *Id.* at 1223. But in

reaching that conclusion, the Ninth Circuit cautioned that, while courts should not "second guess" the *sincerity* of a plaintiff's asserted religious belief, "[t]his principle does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Id*. In other words, the Ninth Circuit held that courts must still assess whether an alleged conflict between a religious belief and an employment duty *objectively* exists on the face of the pleadings.

In addition to that Ninth Circuit precedent, common sense forecloses Ridings' argument. If employers had a duty to accommodate objectively irrational or nonexistent conflicts between employees' religious beliefs and employment requirements, then the only inquiry under a failure-to-accommodate claim would be whether accommodation was possible without undue hardship. Employees could oppose any employer rule or directive that they disliked on the bald assertion of a religious conflict, even if that conflict was not founded on facts and truth. Such a result would leave employers unreasonably vulnerable to baseless allegations of discrimination—in tension with the "primary objective" of Title VII, which "is not to provide redress but to avoid harm." *Faragher*, 425 U.S. at 805-06; *see also Finkbeiner*, 623 F.

Supp. 3d at 456-66 (cautioning against permitting employees "'a blanket privilege'" and "limitless excuse for avoiding all unwanted obligations" required by their employers); *Nogowski*, 2023 WL 7003702, at *4 (same). To avoid this unfair result, the Court should look to its own precedent and reject Ridings' incorrect statement of law.

### 3. Ridings erroneously rejects the requirement that she must allege an *actual conflict* between a religious belief and an employment duty.

In a further attempt to salvage her insufficiently pleaded claim, Ridings makes a remarkable argument: that Title VII somehow precludes a *trial court* from requiring that a plaintiff plead factual details describing both her religious belief and how it conflicts with an employment requirement. Op. Br. at 20-21 (arguing "employers (and, by extension here, trial courts) are forbidden from asking a plaintiff to explain the 'why' of her religiously based objections because to do so would impermissibly transgress the line of demarcation Title VII is intended to protect in this context"). According to Ridings, the *only* question an employer or court can ask is the "yes or no" question whether an employee has a religious objection to a vaccine requirement. This argument can, and should, be rejected out of hand.

The Ninth Circuit's decision in *Bolden-Hardge* demonstrates that a court may inquire into the alleged conflict between a religious belief and employment duty to confirm it is religious in nature. *See* 63 F.4th at 1223 (focusing "inquiry on whether [plaintiff] has alleged an actual conflict" with a religious belief).[16] Ridings offers no explanation for why this Court would overrule its own recent precedent. Instead, she references—and misconstrues—various out-of-circuit cases to argue that courts are experiencing a "jurisprudential shift toward embracing greater religious liberty, rather than constraining it." Op. Br. at 20-21. This argument misses the mark.

A closer analysis of the cases Ridings cites demonstrates the fallacy of her argument. Ridings primarily relies on *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024), a Title VII case which addressed allegations distinguishable from those here. In *Ringhofer*, the plaintiffs each alleged specific religious beliefs in conflict with COVID-19 vaccination. *Id*. at 901. For example, the plaintiffs in that case alleged religious beliefs against abortion violated by their assertion that

---

[16] As does persuasive precedent from other Circuits. *Mason*, 851 F.2d at 51-52; *Fallon*, 877 F.3d at 492.

the Covid-19 vaccine was produced or tested with cell lines derived from aborted fetuses. *Id.* at 901. Here, even assuming the Court considers Ridings' extraneous letter, that letter does not state a conflict with the *COVID-19 vaccine*, only with other vaccines from the 1970s and 1980s. *See* ER-52. In contrast with *Ringhofer*, Ridings' allegations in this case are wholly conclusory and never connected her unspecified "Christian faith" to her objection to COVID-19 vaccination with any factual detail. Thus, *Ringhofer* is not instructive.

Moreover, because *Ringhofer* includes a description of specific religious beliefs *and* an analysis of whether those beliefs conflicted with employment requirements, *id.*, it undermines Ridings' misguided assertion that the trial court is "forbidden" on a motion to dismiss from requiring that a plaintiff plead *both* what her religious belief is *and* how it conflicts with an employment requirement. Rather, *Ringhofer* supports the very analysis that the District Court engaged in here with respect to the allegations contained in Ridings' Complaint.

Ridings also claims that "courts are loathe to allow much more than employer [sic] asking 'yes' or 'no' questions about an employee's religious beliefs." Op. Br. at 20. This argument confuses the first and

second elements of the failure-to-accommodate prima facie case. *See* Op. Br. at 11, 15 (citing *Heller*, 8 F.3d at 1439, regarding notice requirement to employers).[17] The second element (notice to the employer) goes unsatisfied if the employee holds a religious belief in conflict with an employment duty but does not adequately communicate that conflict to her employer. *See, e.g.*, *Morris v. Asante Health Sys.*, No. 1:22-cv-01707-CL, 2025 WL 1770806, at *6 (holding plaintiff failed to satisfy second element of prima facie case because she "did not inform Asante that she had a religious belief that conflicted with an existing employment duty"); *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir. 1977) ("Where, as here, an employee is disinterested in informing his employer of his religious needs . . . he may forego the right to have his beliefs accommodated by his employer."). Here, the second element never came in to play because Ridings failed to meet the first element

[17] Ridings' citations to various Seventh Circuit cases also address this notice element and are, therefore, irrelevant to the issue on appeal here, which is whether Ridings met the first element of her prima facie case. *See* Op. Br. at 12-13 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978); *EEOC v. Sears, Roebuck Co.*, 417 F.3d 789, 804 (7th Cir. 2005); and *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 686 (7th Cir. 2010)).

by not alleging a religious belief in conflict with an employment requirement.

Ridings' argument also reflects confusion about the "bona fide religious belief" inquiry of the first element, which comprises both whether the belief is (a) religious in nature and (b) sincerely held. *Keene*, 2023 WL 3451687, at *1. Specifically, Ridings focuses on the "sincerity" component, which is not at issue on appeal. Despite Ridings' suggestion to the contrary, neither PeaceHealth nor the District Court questioned in connection with the motion to dismiss the *sincerity* of her beliefs in opposition to COVID-19 vaccination. Rather, the issue below and on appeal is whether that opposition was, in fact, based on *religious* beliefs in conflict with the vaccination requirement.[18]

Setting aside Ridings' confusion, the two cases she references do not support an argument that courts may not inquire into the "religious" nature of an asserted belief. The first case, *Does 1-11 v. Bd. of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir. 2024), is

[18] While the sincerity of Ridings' religious beliefs was not at issue in the motion to dismiss and is hence not at issue in this appeal, PeaceHealth does not concede sincerity and reserves the right to dispute the same in the event there are further proceedings in the District Court.

not even a Title VII case. Rather, it concerns claims brought under the Establishment and Free Exercise Clauses of the First Amendment, and the relevant analysis focuses on a state actor's ability under those clauses to inquire into its employee's religious beliefs and to treat certain religions less favorably than others. *Id.* at 1268-1273. Neither issue is relevant to this appeal.

The second case, *Rainey v. Westminster Public School*, No. 22-cv-03166-RMR-KAS, 2024 WL 3329048 (D. Colo. July 7, 2024), *rpt. and recommendation adopted*, 2024 WL 4437858 (D. Colo. Sept. 26, 2024), is at least a Title VII case. But it does not support Ridings' argument that courts may not assess from the factual allegations in the complaint whether the plaintiffs' conflicting belief is religious in nature. In fact, *Rainey* does the opposite. While Ridings cherry-picks a quote cautioning courts against "delving *too deeply* into the religiosity of a plaintiff's beliefs" on a motion to dismiss, she ignores the broader context of that quote. *Id.* at *9 (emphasis added). For example, the court in *Rainey* recognized, citing the Supreme Court's decision in *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972), that "courts *must* engage in the sensitive task of analyzing the religiosity of a plaintiff's beliefs" when assessing

religious accommodation claims. *Id.*, at *6 (emphasis added). In connection with that analysis, the *Rainey* court acknowledges "[o]f course, conclusory allegations regarding the religiosity of beliefs will not pass muster" and explains that a plaintiff's allegations only meet the prima facie burden "[s]o long as they are 'connecting their objection ... to specific religious principles[.]'" *Id.* at *9 (quoting *Ringhofer*, 102 F.4th at 902). Thus, *Rainey* aligns with Ninth Circuit precedent and establishes no error by the District Court here.

Finally, Ridings' citation to two District of Oregon cases does not establish any error by the District Court here, especially where only the four corners of her Complaint need properly be considered. *See* Op. Br. at 21-23 (citing *Welch v. OHSU*, No. 3:23-cv-01231-SB, 2024 WL 3106930, at *6 (D. Or. May 17, 2024), and *White v. Columbia Sportswear Co.*, No. 3:24-cv-00006-SB, 2024 WL 5080032, at *10 (D. Or. Oct. 28, 2024)). In those cases, the courts did not take a "more expansive view of Title VII," as Ridings baldly asserts. Op. Br. at 22-23. Rather, the courts assessed whether various plaintiffs stated an actual conflict between COVID-19 vaccination and their religious beliefs, and applying Ninth Circuit precedent, concluded that *certain* plaintiffs had

met this pleading burden because they alleged *details* specifying religious beliefs *in conflict* with vaccination. *See White*, 2024 WL 5080032, at *10 (concluding plaintiff's allegations that she "asked God for direction and the Holy Spirit moved her heart and conscience to not accept the COVID-19 vaccine" along with her study of Christian scripture and prayer "amount to more than conclusory assertions of a conflict . . . and show how the plaintiff's conflict was rooted in her religious beliefs"); *Welch*, 2024 WL 5080032, at *14-*16 (concluding that three plaintiffs' religiously-based anti-abortion views and a fourth plaintiff's religious view that her "body is a temple of the Holy Spirit" conflicted with taking the COVID-19 vaccine). Ridings' Complaint fails to allege any facts even remotely similar to these specific allegations of a religious conflict.

Other than citing these cases, Ridings makes no effort to apply the reasoning of the *White* and *Welch* courts to her pleadings. This Court should not develop such an argument for her. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited"). Even had Ridings developed that argument, it would fail, as the pleadings in

*Welch* and *White* are readily distinguishable from Ridings' conclusory allegations here. In those cases, the plaintiffs alleged *specific* religious-based conflicts; here, by contrast, Ridings alleged only threadbare references to her religion, without actually identifying any religious conflict. Her claim thus fails.

In sum, none of these cases support Ridings' position, and none establish any error on the part of the District Court.

## CONCLUSION

For all the foregoing reasons, the Court should affirm the decision below.

Dated this 15th day of September, 2025.

Respectfully submitted,

/s/ Michael T. Garone
Michael T. Garone, OSB No. 802341
Kelly S. Riggs, OSB No. 094862
Megan Breen, OSB No. 213676
Schwabe, Williamson & Wyatt, P.C.
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

Attorneys for Defendant-Appellee
PeaceHealth

## CIRCUIT RULE 28-2.6 - STATEMENT OF RELATED CASES

PeaceHealth is aware of the following related cases pending in this Court:

- *Dill v. PeaceHealth*, Case No. 6:23-cv-00720-MTK, *appeal docketed*, No. 25-476 (9th Cir., Jan. 23, 2025);
- *Nash v. PeaceHealth*, Case No. 6:23-cv-01848-AA, *appeal docketed*, No. 24-7316 (9th Cir. Dec. 5, 2024).

These cases are related to *Ridings* in that they all involve (1) religious failure-to-accommodate claims asserting conflict with PeaceHealth's COVID-19 Vaccination Policy; (2) resolution in PeaceHealth's favor on motions to dismiss concluding plaintiffs failed to meet the first element of their prima facie case; and (3) the same trial counsel for both parties: Caroline and Paul Janzen of Rugged Law, Inc. for the plaintiffs and Kelly Riggs and Megan Breen of Schwabe, Williamson & Wyatt, PC for PeaceHealth.

/s/ Michael T. Garone
Michael T. Garone, OSB No. 802341

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _25-7282_______________________________________

I am the attorney or self-represented party.

**This brief contains 13,908 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- [ ] it is a joint brief submitted by separately represented parties.
- [ ] a party or parties are filing a single brief in response to multiple briefs.
- [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Michael T. Garone **Date** September 15, 2025 *(use "*s/[typed name]*" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 15, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished via the appellate CM/ECF system:

/s/ Michael T. Garone
Michael T. Garone, OSB No. 80234