**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KARLY RIDINGS,<br><br>*Plaintiff - Appellant*,<br><br>v.<br><br>PEACEHEALTH,<br><br>*Defendant - Appellee*. | No. 24-7282<br><br>D.C. No. 6:23-cv-01514-MK<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted March 12, 2026
Portland, Oregon

Filed September 24, 2026

Before: Daniel P. Collins and Kenneth K. Lee, Circuit Judges, and Sidney A. Fitzwater, District Judge.*

Opinion by Judge Lee

* The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

## SUMMARY**


### Employment Discrimination

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of Karly Ridings's employment discrimination action against PeaceHealth, alleging a failure to accommodate her religious beliefs under Title VII and Oregon state law, and remanded for further proceedings.

Ridings, a registered nurse, sent a letter to PeaceHealth requesting a religious exemption from a mandatory vaccination policy on two religious grounds. In response, PeaceHealth placed her on indefinite leave without benefits or pay. In her complaint, Ridings briefly explained her rationale for declining the vaccine, but she did not attach the letter. PeaceHealth moved to dismiss for failure to plead the first element of a failure-to-accommodate religious discrimination claim, that PeaceHealth's vaccination policy conflicted with Ridings's bona fide religious beliefs. In her opposition to the motion to dismiss, Ridings requested leave to amend the complaint if the court found the pleading to be insufficient. She also attached a copy of the religious exemption letter that she had tendered to PeaceHealth.

The panel held that under the incorporation-by-reference doctrine, the district court should have considered the contents of Ridings's letter because it was central to her claim. The panel held that, considering the letter, Ridings easily satisfied the plausibility threshold for a prima facie Title VII religious discrimination claim, which requires a


** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plaintiff to show that an employment duty conflicted with her sincere religious beliefs or practice and also that she informed her employer of the belief and conflict.

---

## COUNSEL

Paul Janzen (argued) and Caroline Janzen, Rugged Law Inc, Portland, Oregon, for Plaintiff-Appellant.

Michael T. Garone (argued), Kelly S. Riggs, and Megan Breen, Schwabe Williamson & Wyatt PC, Portland, Oregon, for Defendant-Appellee.

---

## OPINION

LEE, Circuit Judge:

Karly Ridings, a registered nurse at the PeaceHealth hospital system, objected to her employer's mandatory COVID-19 vaccination policy on religious grounds. In her letter seeking a religious accommodation, Ridings said that the vaccine derives from fetal cells and that the vaccination policy thus conflicts with her opposition to abortion rooted in her Christian faith. PeaceHealth responded by placing Ridings on indefinite, unpaid leave. Ridings then sued, claiming that the hospital failed to accommodate her religious beliefs under federal and state law. The district court apparently ignored Ridings' letter because it had not been attached to her complaint. It then dismissed the lawsuit without giving leave to amend, ruling that Ridings did not

adequately explain the religious basis for objecting to the COVID-19 vaccine.

We hold that the district court erred in not considering Ridings' religious exemption request letter and then dismissing the complaint. Under the incorporation-by-reference doctrine, the district court should have considered the contents of Ridings' letter because it is central to her claim. And once we consider her letter, Ridings easily satisfies the plausibility threshold for a prima facie Title VII religious discrimination claim. Courts generally cannot question the sincerity of someone's religious beliefs: Judges may wear robes, but we are not men and women of cloth who can opine on religious convictions. We reverse the dismissal of the lawsuit.

## BACKGROUND

### I. Factual History

Karly Ridings worked as a registered nurse for PeaceHealth, a hospital system in Oregon. In early August 2021, Oregon's governor issued a mandate requiring all health care workers in the state to vaccinate themselves against the COVID-19 virus. PeaceHealth announced that it would require its health care workers to take the COVID-19 vaccine. Ridings sent a letter to PeaceHealth requesting a religious exemption from the mandatory vaccination policy.

Ridings objected to vaccination on two key grounds. First, Ridings, who was pregnant at the time, feared that the COVID-19 vaccine posed safety risks to pregnant women and children in utero. She wrote that PeaceHealth's policy required her to violate her religious conviction to "honor and protect [her] body . . . [and] temple" and to decline

introducing something that could "harm or kill" her unborn child.

Second, Ridings said vaccination would violate her religious beliefs against abortion. Ridings' request stated: "Though the aborted fetal cells used to create vaccinations in the 1970s and 1980s may be far removed from today's vaccine, they still originate from those aborted children. The practice of using an aborted child's body for science against his will violates my religious conscience." Ridings then cited a passage from the Bible, quoting Jeremiah 1:5: "Before I formed you in the womb I knew you, and before you were born I consecrated you[.]"

She offered examples of accommodation that PeaceHealth could offer (*e.g.*, switching her to non-patient care, requiring precautionary measures such as use of masks). PeaceHealth granted Ridings a different "accommodation:" It placed Ridings on indefinite leave without benefits or pay. At the time, Ridings was in her third trimester in pregnancy—and she suddenly found herself without health insurance or income.

## II. Procedural History

Ridings sued, alleging PeaceHealth's decision to place her on unpaid leave constituted a failure to accommodate her religious beliefs under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Oregon's parallel anti-discrimination statute, Or. Rev. Stat. § 659A.030.

The complaint did not attach a copy of Ridings' accommodation request letter to PeaceHealth or discuss its contents in detail, but it did reference "her religious exception request." It also briefly explained Ridings' rationale for declining the vaccine, including that "as a

Case: 24-7282, 09/24/2026, DktEntry: 66.1, (6 of 14)



devout Christian, [she] did not believe it was consistent with her faith to take the vaccine."

PeaceHealth moved to dismiss Ridings' complaint under Federal Rule of Civil Procedure 12(b)(6), arguing she failed to plausibly plead the first element of a failure-to-accommodate religious discrimination claim—that PeaceHealth's vaccination policy conflicted with Ridings' bona fide religious beliefs. In her opposition to the motion to dismiss, Ridings requested leave to amend the complaint if the court found the pleading to be found insufficient. She also attached a copy of the religious exemption letter that she had tendered to PeaceHealth.

The federal magistrate judge assigned to the case issued a recommendation to deny the motion to dismiss. The order did not discuss the substance of Ridings' letter to PeaceHealth. But the magistrate judge concluded that Ridings' allegation in the complaint that the vaccine was not "consistent with her faith" was sufficient at the pleadings stage.

PeaceHealth objected. On further review, the district court rejected the magistrate judge's recommendation. The district court characterized Ridings' complaint as merely stating "a general allegation of religious conflict without identifying a conflicting belief[.]" It thus found Ridings' complaint too conclusory to state a plausible claim for relief. Like the magistrate judge's order, the district court's order did not discuss the religious exemption letter that Ridings had sent to PeaceHealth. The district court then dismissed Ridings' claims "without prejudice" but it did not give leave to amend the complaint and instead entered judgment dismissing it. Ridings timely appealed.

## STANDARD OF REVIEW

We review de novo a district court's order dismissing a complaint for failure to state a claim. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021). We review a district court's denial of leave to amend for abuse of discretion, *see Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc), but we review de novo whether amendment of the complaint would be futile, *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023).

## DISCUSSION

### I. The district court erred in dismissing Ridings' complaint.

We hold that the district court erred in not considering the contents of Ridings' religious exemption letter in deciding the motion to dismiss. And if we consider the religious reasons set out in Ridings' letter, she has plausibly alleged a prima facie case for a religious discrimination claim.

#### A. Ridings' religious exemption letter is central to her claim and thus was incorporated by reference into the complaint.

In deciding a motion to dismiss, courts ordinarily consider only the facts alleged on the face of the complaint or in documents attached to it. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But we have recognized an exception to this general rule under the "incorporation by reference" doctrine: If a plaintiff's claim necessarily relies on a document's existence (and there is no dispute about its authenticity), courts may treat that document as though it is "part of the complaint itself." *See Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (similar).

For example, in *Knievel v. ESPN*, the famed stuntman Evel Knievel sued ESPN for defamation for satirically calling him a "pimp" on its website. *See Knievel*, 393 F.3d at 1070. We considered the surrounding text and photographs on the website—even though they were not attached to the complaint or even expressly mentioned in it—because we needed to consider the surrounding context to assess the defamation claim. *See id.* at 1074–77. *See also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (incorporating copy of employee healthcare plan where the claim depended on the terms of the plan and plaintiff's membership in the plan); *Marder*, 450 F.3d at 448–49 (considering contents of a release agreement when its existence was mentioned in the complaint and it was "central to [plaintiff's] claim").

Likewise here, Ridings' claims of religious discrimination turn on the reasons she gave in her religious exemption letter for refusing to take the COVID-19 vaccine.[1] When an employee's religious belief conflicts with an employment duty, Title VII of the Civil Rights Act and Oregon's anti-discrimination statute require an employer to accommodate the employee unless doing so would cause undue hardship. *See* 42 U.S.C. §§ 2000e(j), 2000e-2(a); Or. Rev. Stat. §§ 659A.030(1), 659A.033(1)(b), (4). A plaintiff alleging religious discrimination for an

[1] We analyze together Ridings' failure-to-accommodate claims under both federal and state law. *See Dawson v. Entek Int'l*, 630 F.3d 928, 934–35 (9th Cir. 2011) (concluding Oregon's anti-discrimination law uses the same framework as Title VII and cross-applying analysis of Title VII claim to state law claims).

employer's failure to do so has the initial burden of proving the prima facie case; the burden then shifts to the employer to justify its decisions. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993).

In this circuit, we require the plaintiff not only to show an employment duty conflicted with her sincere religious beliefs or practice, but also to show she "*informed* [her] employer of the belief and conflict." *Id.* at 1438 (emphasis added). Put differently, a failure-to-accommodate claim requires that a plaintiff show she requested an accommodation from her employer—and that the request explained why the accommodation is required for religious reasons. Without knowing the basis for Ridings' request to PeaceHealth, we would be unable to assess her claim. Thus, the merits of Ridings' case necessarily rely on the exemption request letter she shared with PeaceHealth. Further, her complaint expressly mentioned that letter, putting the district court on notice of it (which was then attached as an exhibit to Ridings' opposition to the motion to dismiss).

In sum, because the complaint references the religious exemption request letter and no party contests its authenticity, the district court should have considered its content in deciding the motion to dismiss.[2]

[2] Alternatively, we hold that the district court abused its discretion in entering judgment without granting Ridings the opportunity to amend her complaint to attach the religious exemption letter and provide additional details about its content. "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Not only that, we can even treat the letter as an offer of proof that Ridings could provide additional facts in an amended complaint and then consider those proffered facts as if they were part of the original complaint under

### B. Ridings adequately pleaded that her religious obligations conflicted with PeaceHealth's COVID-19 vaccination policy.

If we consider the religious-based reasons explained in Ridings' letter, Ridings has adequately alleged a prima facie case of failure to accommodate her religious beliefs under Title VII and state law. She has plausibly pleaded that she held a "bona fide religious belief that conflicts with an employment requirement." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) (internal quotation marks omitted).

Claims of religious discrimination need only "meet the same level of plausibility as any other prayer for relief." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 895 (9th Cir. 2025). And in assessing plausibility, we must be careful not to probe into the genuineness of someone's religious convictions because to do so would betray a long line of precedent that admonishes courts not to act as "arbiters of scriptural interpretation." *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014) ("[F]ederal courts have no business addressing . . . whether the religious belief asserted . . . is reasonable[.]"). Here, Ridings has plausibly alleged that she opposes the

---

de novo review of the dismissal order. *See Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582, 586 (9th Cir. 2020) (holding that, in determining whether amendment of the complaint would be futile, court could properly consider "additional well-pleaded contentions that are contained in [a] declaration of counsel" that was submitted in opposition to motion to dismiss and that outlined grounds for amendment).

COVID-19 vaccine because of her religious objection to abortion.[3]

PeaceHealth responds that the Ninth Circuit has recalibrated our framework for religious discrimination claims, citing our recent decision in *Detwiler*. In that case, our court held that a plaintiff must plead "enough facts to show her belief [opposing an employment policy] is religious" in nature, "rather than purely secular." *Detwiler*, 156 F.4th at 895. To be sure, our decision in *Detwiler* explicitly created a circuit split by allowing courts in our circuit to wade a bit more deeply into this fraught area. *See id.* at 998–99 (rejecting, as "far too permissive," the standards applied in *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902 (8th Cir. 2024); *Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241, 1243 (6th Cir. 2024)).

But *Detwiler* did not create such a vast sea change as to sink Ridings' claims. Indeed, we emphasized in *Detwiler* that we still must be careful not to "examine the sincerity or the reasonableness of [a party's religious] belief." *Detwiler*, 156 F.4th at 895. The central question remains whether an employee's professed religious beliefs, taken at face value, conflict with the employer's policy. That is a low bar: We merely ask whether "there is *any* nexus between religion and [her] viewpoint" on the employment policy. *Detwiler*, 156

[3] The fact that not all Christians may share Ridings' beliefs about abortion and the use of fetal cells does not undermine the genuineness of her religious convictions. The Supreme Court has held that a religious belief need not be universal within a particular faith to merit protection. *See Thomas*, 450 U.S. at 715–16 ("[T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.").

F.4th at 899 (emphasis added). In other words, *Detwiler* requires a plaintiff to offer more specific allegations to support her religious basis for her objection to an employer's policy *if* the objection appears to be based on "*purely* secular" reasons. *Id.* at 895 (emphasis added).

*Detwiler* thus held that a plaintiff cannot just cite a "general religious principle" as a cover for a purely "personal, medical judgment" when the facts suggest that her objection to her employer's policy is likely based on "purely secular" reasons. *Id.* at 895, 900. There, the plaintiff feared that a mandatory nasal swab test for the COVID-19 virus was physically harmful, citing secular sources suggesting nasal swabs may be carcinogenic. *Id.* at 891. After reading those sources, Detwiler concluded nasal swabs were not only potentially carcinogenic, but certain to cause her physical harm. *See id.* Based on this belief that the nasal swabs are scientifically harmful, Detwiler stated that her objection was in fact religious in nature because religion teaches that her body is a temple which may not be harmed. *Id.*

Our court determined—at least based on the complaint—that Detwiler's objection to the policy did not turn on religious conscience but exclusively on the secular judgment that a nasal swab is physically harmful. *See id.* at 895. Thus, we concluded Detwiler had offered a "purely secular" objection to the policy and failed to show any nexus with her religious convictions. *Id.* at 895, 900.

To be clear, in many cases, a personal or scientific judgment may overlap with a religious duty. When that occurs, "the area of overlap is presumably protected." *Callahan v. Woods*, 658 F.2d 679, 684 (9th Cir. 1981). In *Detwiler*, the problem was not that a secular judgment was

intertwined with a religious judgment, but the opposite—the court noted Detwiler failed to "present a case where a religious belief overlaps with a medical one." *Detwiler*, 156 F.4th at 895. Detwiler did not cure this problem by generally pleading that the Holy Spirit revealed to her that she "must not participate in COVID testing *that causes harm*." *Id*. at 891 (quoting attachment to complaint) (emphasis added). Importantly, she did not plead that her prayers gave her a religious *definition or standard* for "harm" that overlapped with Detwiler's personal fears about the nasal swabs. *Id.*

In contrast, Ridings' complaint easily satisfies the plausibility standard to survive dismissal. Ridings' letter to PeaceHealth stated with specificity the religious nature of her objection to the COVID-19 vaccine: Her faith bars her from using products derived from fetal cells made available through abortion. While Detwiler's objection turned on a purely secular determination that the nasal swab causes physical harm, Ridings' objection stems from religious opposition to the use of fetal cells. Ridings pleaded that, according to her faith, harvesting fetal cells from the bodies of aborted children disregards their divinely created dignity, and that her sincerely held religious beliefs forbid Ridings from participating, even in an attenuated fashion, in any such morally reprehensible use of a child's aborted body. Ridings supported her specific religious objections with passages from the Bible. In short, Ridings specifically explained why her religion directly bans her use of the vaccine.

Indeed, *Detwiler* implicitly confirmed that Ridings has pleaded a plausible religious basis for her objection to the vaccination mandate. Distinguishing Detwiler's claim from those at issue in an unpublished decision of the Ninth Circuit, *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023), the court

stated that the *Keene* plaintiffs' challenge to an employer's COVID-19 vaccination mandate "pled a *specific religious belief* in opposition to receiving the vaccination—their *opposition to the use of fetal cells* used in developing the available vaccines—and identified the religious basis for their objection to vaccination as their Christian faith's opposition to abortion." *Detwiler*, 156 F.4th at 896 n.2 (citing *Keene*, 2023 WL 3451687, at *2) (emphasis added). Ridings here makes the same objection as the *Keene* plaintiffs. Her objection satisfies the plausibility standard for a Title VII claim.

Because we conclude Ridings sufficiently pleaded a religious objection based on the use of fetal cells, we do not decide here whether her other objections (*e.g.*, that vaccination conflicts with Ridings' religious belief to treat her body as a temple) state a Title VII claim.

## CONCLUSION

We **REVERSE** the district court's dismissal of Ridings' claims for relief and **REMAND** for further proceedings consistent with this opinion.